## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

### El Paso Division

EDGAR ULLOA LUJAN;

SAMAR AHMAD;

*Plaintiffs*,

v.

U.S. DEPARTMENT OF EDUCATION;

MIGUEL CARDONA, Secretary, U.S. Department of Education, in his official capacity;

MICHELLE ASHA COOPER, Assistant Secretary for Postsecondary Education, U.S. Department of Education, in her official capacity;

*Defendants*.

CIVIL CASE NO. 3:22-CV-159

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE, AND OTHER RELIEF**

JURY TRIAL DEMANDED

Plaintiffs by and through their attorneys at the New Civil Liberties Alliance ("NCLA"), allege the following:

### INTRODUCTORY STATEMENT

The Fulbright-Hays Doctoral Dissertation Research Abroad Fellowship ("Fulbright-Hays Fellowship") was established under the Fulbright-Hays Act of 1961 to support and promote U.S. students to conduct doctoral research in foreign countries using a foreign language. To be eligible, a U.S. student must have adequate language proficiency to conduct the research. The Department evaluates applicants on a 106-point scale, with language proficiency counting for 15 points.

1

Starting in 1998, the Department began to use the language-proficiency criterion to disadvantage U.S. students who have immigrant heritage by assigning them 0 out of 15 points for language proficiency if they acquired the relevant foreign language through their national heritage. *See* 34 C.F.R. § 662.21(c)(3). The Department imposes this 15-point penalty on U.S. students with immigrant heritage to tilt the scale against students it considers to be "non-native born" Americans.

The Fulbright-Hays Act does not authorize such blatant and un-American discrimination based on national heritage. In fact, it undermines that Act's purpose of promoting international openness and exchange. Americans with immigrant heritage further have a constitutional due-process and equal-protection right to be free from the Department's discriminatory animus. Accordingly, this Court should enjoin the Department's current language-proficiency criterion as unlawful and unconstitutional. The denials of Plaintiffs' applications based on that criterion are likewise unlawful and must be set aside.

## **PARTIES**

1.      Plaintiff Samar Ahmad is a resident of Burke, Virginia. She is a doctoral candidate in Georgetown University's History Department and plans to enter a teaching career in the United States after graduating. Ms. Ahmad was born in Kuwait and became a naturalized citizen of the United States in 1996, when she was 10-years old.  Ms. Ahmad grew up speaking Arabic and began to learn English in pre-school. Ms. Ahmad has improved her Arabic-language skills (both reading and writing) to the equivalent of a well-educated native speaker by taking courses taught in Arabic, including coursework that was part of her doctoral training at Georgetown. In 2021, Ms. Ahmad applied for the Fulbright-Hays Fellowship to conduct dissertation research in Jordan, which is an Arabic-speaking country. In evaluating Ms. Ahmad's application, the Department of Education penalized her for not satisfying the fellowship's foreign-language-proficiency

2

requirement, even though she is fluent in Arabic (and of course, English). The Department imposed this language-proficiency penalty on Ms. Ahmad because she speaks Arabic as part of her national heritage. This penalty prevented Ms. Ahmad from obtaining the Fulbright-Hays Fellowship in 2021. Ms. Ahmad reapplied for the Fulbright-Hay Fellowship in 2022 and will face the same penalty based on her national heritage.

2.      Plaintiff Edgar Ulloa Lujan is a resident of El Paso, Texas. He is a doctoral candidate in Georgetown University's Spanish Department and plans to enter a teaching career in the United States after graduating. Mr. Ulloa Lujan is a citizen of Mexico. He grew up in Juarez, Mexico, across the border from El Paso, Texas. Mr. Ulloa Lujan started his studies in El Paso, Texas, in 2001 and attended the University of Texas at El Paso. He moved to New York City in 2013 to pursue a graduate degree at New York University on a full scholarship. Mr. Ulloa Lujan became a Legal Permanent Resident in 2018. Mr. Ulloa Lujan has spoken Spanish since childhood. He has improved his Spanish language skills by taking courses taught in Spanish, including coursework that was part of his doctoral training at Georgetown. In 2020 and again in 2021, Mr. Ulloa Lujan applied for the Fulbright-Hays Fellowship to conduct dissertation research in Spain, which is a Spanish-speaking country in which different variations of Spanish are spoken as compared to Mexico. In evaluating Mr. Ulloa Lujan's application, the Department of Education penalized him for not satisfying the fellowship's foreign-language-proficiency requirement, even though he is fluent in Spanish (and of course, English). The Department imposed this language-proficiency penalty on Mr. Ulloa Lujan because he speaks Spanish as part of his national heritage. This penalty prevented Mr. Ulloa Lujan from obtaining the Fulbright-Hays Fellowship and deters him from reapplying in the future.

3.      Defendant U.S. Department of Education administers Fulbright-Hays Fellowships and is an agency within the Executive Branch of the United States.

4.      Defendant Miguel Cardona is named in his official capacity as Secretary of the U.S. Department of Education ("Secretary").

5.      Defendant Michelle Asha Cooper is named in her official capacity as Assistant Secretary of the U.S. Department of Education for Postsecondary Education.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 2201(a).

7.      Venue is proper within this District pursuant to 28 U.S.C. § 1391. Defendants are United States agencies or officers sued in their official capacities. Plaintiff Ulloa Lujan resides in El Paso, Texas.

## STATEMENT OF FACTS

### I.    STATUTORY AND REGULATORY BACKGROUND

8.      Congress enacted the Mutual Education and Cultural Exchange Act of 1961, also known as the Fulbright-Hays Act, "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange." 22 U.S.C. § 2451.

9.      The Fulbright-Hays Act authorizes the President to establish exchange programs for the purpose of "promoting modern foreign language training and area studies in United States schools, colleges, and universities by supporting visits and study in foreign countries by teachers and prospective teachers in such schools, colleges, and universities for the purpose of improving their skill in languages and their knowledge of the culture of the people of those countries." *Id.*

§ 2452(b)(6). The President may delegate the authority to establish and administer such programs to such officers as he determines appropriate. *Id.* § 2454(a).

10.     Pursuant to § 2452(b)(6), the Department of Education established the Fulbright-Hays Fellowship "to contribute to the development and improvement of the study of modern foreign languages and area studies in the United States by providing opportunities for scholars to conduct research abroad." 34 C.F.R. § 662.1. "Under the program, the Secretary [of Education] awards fellowships, through institutions of higher education, to doctoral candidates who propose to conduct dissertation research abroad in modern foreign languages and area studies." *Id.*

11.     To be eligible to receive a Fulbright-Hays Fellowship, an individual must be: (1) a citizen or permanent resident of the United States; (2) a doctoral student in a program in modern foreign languages and area studies in a U.S. institute of higher education; (3) planning a teaching career in the United States after completing the doctoral program; and (4) in possession of "sufficient foreign languages skills to carry out the dissertation research project." *Id.* at § 662.3.

12.     The Fulbright-Hays Fellowship is competitive and prestigious. The Department of Education pays awardees for travel expenses, cost of living, research-related expenses, and insurance premiums for the duration of the fellowship, which lasts between six and twelve months. *Id.* at § 662.5 and .6

13.     Applications may be submitted each year. "An individual applies for a fellowship by submitting an application to the Secretary through the institution of higher education in which the individual is enrolled." *Id.* at § 662.10. The institution is responsible for making application material available to students, screening applicants in accordance with its own criteria, and submitting applications to the Secretary of Education. *Id.* at § 662.11.

5

14.     The Secretary then selects awardees among the applicants based on three categories of selection criteria: (1) quality of the research project; (2) qualifications of the applicant; and (3) priorities that the Secretary may establish each year. *Id.* at § 662.21. If an applicant is not awarded the Fulbright-Hays Fellowship, he or she may reapply the next year.

## II.     THE DEPARTMENT'S APPLICATION PROCESS DISADVANTAGES IMMIGRANTS FROM NON-ENGLISH-SPEAKING COUNTRIES AND CHILDREN OF SUCH IMMIGRANTS

15.     Application instructions for the Fulbright-Hays Fellowship are available as a 129-page Microsoft Word document on the Department of Education's website: https://www2.ed.gov/programs/iegpsddrap/applicant.html (last visited April 11, 2022) ("Fulbright-Hays Instructions"). A PDF version of relevant excerpts of the Fulbright-Hays Instructions is attached as Exhibit 1.

16.     The Fulbright-Hays Instructions contain selection criteria used to evaluate applicants, which are identical to the regulatory critera listed at 34 U.S.C. § 662.21. *Compare* Fulbright-Hays Instructions at 36-38 (providing template of Technical Review Form), *with* 34 C.F.R. § 662.21.

17.     Applicants are evaluated on a 106-point scale. The "Quality of the Research Project" is worth up to 60 points; the "Qualification of the Applicant" is worth up to 40 points; and the Secretary's "Priorities" are worth up to 6 points.[1] Fulbright-Hays Instructions at 36-38.

---

[1] The current Priorities of the Secretary are: (1) "A research project that focuses on any modern foreign language except French, German, or Spanish," which is worth 2 points; (2) "A research project conducted in the field of science (including climate change), technology, engineering (including infrastructure studies), mathematics, computer science, education (comparative or international), international development, political science, public health (including epidemiology), or economics," which is worth 2 points; and (3) "Focus on Minority-Serving Institutions," which is worth 2 points. Fulbright-Hays Instructions at 38.

18.     Within the 40-point "Qualification of the Applicant" category are the following four selection criteria derived from 34 C.F.R. § 662.21(c):

- Criterion 1: "The overall strength of the applicant's graduate academic record," which is worth up to 10 points.

- Criterion 2: "The extent to which the applicant's academic record demonstrates strength in area studies relevant to the proposed project," which is worth up to 10 points.

- Criterion 3: "The applicant's proficiency in one or more of the languages (other than English and the applicant's native language) of the country or countries of research, and the specific measures to be taken to overcome any anticipated language barriers," which is worth up to 15 points.

- Criterion 4: "The applicant's ability to conduct research in a foreign cultural context," which is worth up to 5 points.

Fulbright-Hays Instruction at 36-38.

19.     Criterion 3, which evaluates the applicant's foreign-language proficiency, is given the most weight (15 points) within the "Qualification of the Applicant" category. Dr. Pamela Maimer, the program manager of the Fulbright-Hays Fellowship, explained in a 2022 webinar that "the applicant's language proficiency [is] worth 15 points, one of the highest points in the application overall." Fulbright-Hays Doctoral Dissertation Research Abroad: FY2022 Application Technical Assistance Webinar at 28:04 ("2022 Fulbright-Hays Webinar").[2]

20.     The foreign-language criterion at 34 C.F.R. § 662.21(c) expressly disqualifies "the applicant's native language" from counting toward foreign-language proficiency. Students are

---

[2] Available at: https://www.youtube.com/watch?v=dVD327Bxhmw.

required to disclose the language of their national heritage, if any, in their applications. Fulbright-Hays Instructions at 46. The Department's Fulbright-Hays Instructions explains that "in our regulations under § 662.21(c)(3), native speakers are not eligible for points [for] Criterion 3 under 'Qualifications of the Applicant[.]'" *Id.* Dr. Pamela Maimer's 2022 webinar further confirmed that "native speakers . . . are not eligible for points in their native language[.]" 2022 Fulbright-Hays Webinar at 28:55.

21.     "The term native speaker means a person who has spoken the language in question from earliest childhood and remains fluent in that language." Fulbright-Hays Instructions at 46. Most U.S. students who are native speakers of a foreign language will be immigrants from non-English-speaking countries or their children.  Others are Americans who have spoken Spanish in the Southwest since before American annexation, or French in Louisiana, Michigan, Maine and Vermont, for similar historical reasons.

22.     Even though the Fulbright-Hays Fellowship requires students to be proficient in the foreign language in which research is to be conducted, U.S. students who acquire a foreign language through their national heritage receive 0 out 15 points for being fluent under the Department's language-proficiency criterion based on § 662.21(c)(3).

23.     The Department also has special rules for "heritage speakers" of a foreign language that are purportedly derived from 34 C.F.R. § 662.21(c)(3). The Department defines heritage speaker as "a student who is raised in a home where a non-English language is spoken, who speaks or merely understands the heritage language, and who is to some degree bilingual in English and the heritage language, but lacks native level fluency in writing, speaking, and understanding in that language." Fulbright-Hays Instructions at 46. A heritage speaker "may be eligible for up to 10 points" out of the 15 possible points for foreign-language proficiency. *Id.* Most U.S. students who

are heritage speakers of a foreign language will be immigrants from non-English-speaking countries or their children.

24.     According to the Department, both native and heritage speakers of a foreign language acquire the language as a child through their national heritage. What distinguishes a "native speaker" (who is not eligible for any language-proficiency points) from a "heritage speaker" (who is eligible for 10 points) is the extent of fluency. A native speaker is fluent, while a heritage speaker "lacks native level fluency." Fulbright-Hays Instructions at 46.

25.     The Department's language-proficiency criterion places immigrants (and their children) who speak the foreign language of their national heritage at a significant disadvantage.

26.     Due to the competitive nature of the Fulbright-Hays Fellowship, not being eligible for 15 out of 106 possible points presents an insurmountable barrier to obtaining the award. Thus, the inability for "native speakers" to score *any* of the 15 points available under the foreign-language criterion effectively disqualifies U.S. students who are fluent in the language of their national heritage from obtaining the Fulbright-Hays Fellowship to study in any country that speaks that language. "Heritage speakers" who are less than fluent in the language of their national heritage face a smaller, albeit still significant penalty.

27.     For U.S. students who speak a foreign language through their national heritage, additional training in that language is necessary to satisfy the Fulbright-Hays Fellowship's requirement to have "sufficient foreign languages skills to carry out [a doctoral] dissertation research project." 34 C.F.R § 662.3. In most circumstances, language skills needed to carry out doctoral research far exceed what an individual acquires by having "spoken the language in question from earliest childhood." Fulbright-Hays Instruction at 46. As such, an immigrant or child

of immigrants who spoke a foreign language as a child will need additional training to improve his or her language skills to the level needed to conduct doctoral research in a specific field.

28.     The high level of foreign-language skills needed for doctoral research under the Fulbright-Hays Fellowship is reflected in the Foreign Language Referee Form that applicants must submit. The two highest marks, which generally are needed to score the full 15 points available in the language-proficiency criterion, are (1) "functionally equivalent to a *well-educated* native speaker" and (2) "[a]ble to use the language fluently and accurately on all levels pertinent to *professional* needs." Foreign Language Referee Form (attached as Exhibit 2) (emphases added).

29.     Most U.S. students who speak a foreign language through their national heritage will not become "well-educated" speakers of that language or be capable of using the language fluently for "professional needs" without additional training in that language, which usually occurs at school.

30.     For example, most Americans speak English as their native language. But they are generally considered "well-educated" or "professional" users of the English language only after significant schooling. For the same reason, U.S. students who speak a foreign language as part of their national heritage will require significant schooling to reach the level of professional fluency needed to conduct doctoral research for the Fulbright-Hays Fellowship. *See* 34 C.F.R § 662.3.

31.     However, if such U.S. students undertake additional language training to attain professional fluency in the language of their national heritage, they will be considered "native speakers" under the Department's language-proficiency criterion and be subject to a 15-point penalty that functionally disqualifies them from obtaining the Fulbright-Hays Fellowship.

32.     The only way for immigrant U.S. students to conceivably remain competitive with non-immigrant applicants is to not pursue additional training in the foreign language of their

national heritage and thus be categorized as less-than-fluent "heritage speakers" who are subject to a smaller penalty. Even then, such students would still face a significant 5-point disadvantage compared to non-immigrants who could develop professional fluency in that language without being disqualified.

33.     The Department's foreign-language criterion perversely encourages U.S. students who speak the foreign language of their national heritage to let their language skills atrophy—thereby becoming less fluent "heritage speakers" who face a 5-point penalty. If they instead train to be fluent in that language, they become "native speakers" who face a 15-point penalty. This perverse incentive is contrary to the Fulbright-Hays Act's authorization to establish programs that "promot[e] modern foreign language training and area studies in United States schools, colleges, and universities[.]" 22 U.S.C. § 2452(b)(6). The regulation directly undermines the goal of the Act by reducing the number of highly proficient foreign-language speakers in the United States.

34.     Regardless of whether they are native or heritage speakers, the Department's language-proficiency criterion penalizes U.S. students who acquired a foreign language from their national heritage. The overwhelming majority of U.S. students who face such penalties will be immigrants from non-English-speaking countries or the children of such immigrants.

## III.    THE FULBRIGHT-HAYS ACT DOES NOT AUTHORIZE THE DEPARTMENT OF EDUCATION TO PENALIZE APPLICANTS BASED ON THEIR NATIONAL HERITAGE

35.     Nothing in the Fulbright-Hays Act authorizes the implementing agency—here the Department of Education—to penalize U.S. students who speak a foreign language as part of their national heritage for the purpose of awarding financial scholarships.

36.     To the contrary, three years after enacting the Fulbright-Hays Act, Congress passed Title VI of the Civil Rights Act of 1964, which states: "No person in the United States shall, on the ground of race, color, *or national origin*, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Pub. L. 88-352, Title VI, § 601, July 2, 1964, codified as 42 U.S.C. § 2000d ("Title VI") (emphasis added).

37.     The Department of Education is responsible for enforcing Title VI's antidiscrimination provision against programs or activities that receive federal financial assistance, including universities through which Fulbright-Hays Fellowships are awarded. *See* 42 U.S.C. § 2000d-1; 34 C.F.R. § 100.1.

38.     Title VI's express prohibition against "national origin" discrimination in access to federal financial assistance conclusively forecloses any interpretation of the Fulbright-Hays Act that penalizes U.S. students for speaking the foreign language of their national heritage.

## IV.     THE DEPARTMENT REVISED ITS LANGUAGE-PROFICIENCY REGULATIONS IN 1998 FOR THE PURPOSE OF DISADVANTAGING 'NON-NATIVE BORN' APPLICANTS

39.     Prior to 1998, the Department's Fulbright-Hays selection criteria did not penalize applicants who speak a foreign language as part of their national heritage. The pre-1998 language-proficiency criterion asked whether "[t]he applicant possesses adequate foreign language skills to carry out the proposed project." 34 C.F.R. § 662.33(b)(2)(ii) (1997). Whether applicants acquired relevant foreign-language skills through their national heritage did not matter.

40.     On June 19, 1998, the Department issued a notice of proposed rulemaking to simplify and revise its Fulbright-Hays regulations at 34 C.F.R. Part 662, including renaming that part to "Fulbright-Hays Doctoral Dissertation Research Abroad Fellowship Program." 63 Fed. Reg. 33,765 (June 19, 1998). The comment period closed on July 20, 1998. Twelve days later, on August 1, 1998, the Department adopted the proposal as final. 63 Fed. Reg. 46,358, 46,363 (Aug. 1, 1998) ("1998 Final Rule").

41.     The 1998 Final Rule moved the list of selection criteria from 34 C.F.R. § 662.33 to § 662.21. It also revised the nationality-neutral language-proficiency criterion under 34 C.F.R. § 662.33(b)(2)(ii) (1997) to instead evaluate "[t]he applicant's proficiency in one or more of the languages (*other than English and the applicant's native language*) of the country or countries of research." 63 Fed. Reg. at 46,363 (emphasis added).

42.     In explaining why "the applicant's native language" could not count toward foreign-language proficiency, the 1998 Final Rule explained that because Fulbright-Hays "programs were originally intended to enhance the foreign language competence of individuals trained in American schools, the criteria would be modified to give greater emphasis to having acquired a foreign language." *Id.* at 46,359.

43.     The Department apparently believed that U.S. students whose "native language" is a foreign language cannot "enhance the[ir] foreign language competence [by being] trained in American schools." *Id.* This belief is also reflected in the Department's definition of "native speaker" as "a person who has spoken the language in question from earliest childhood and *remains* fluent in that language." Fulbright-Hays Instruction at 46 (emphasis added). The word "remains" reflects the Department's view that no additional effort or training is needed to become fluent in a foreign language acquired during childhood. This view is clearly false. A U.S. student whose "native language" is a foreign language does not typically acquire professional-level fluency—including, for example, field-specific technical vocabulary—needed to conduct Ph.D.-level research in that language without additional training. *See supra*, ¶¶ 27-29.

44.     The 1998 Final Rule also misinterpreted the Fulbright-Hays Act to require favoring individuals who "acquired a foreign language" from being "trained in American schools," as opposed to acquiring it from their national heritage. 63 Fed. Reg. at 46,359.

13

45.     But the Act says no such thing. Rather, it authorizes programs to "promot[e] modern foreign language training and area studies in United States schools, colleges, and universities by supporting visits and study in foreign countries by teachers and prospective teachers in such schools, colleges, and universities for the purpose of improving their skill in languages." 22 U.S.C. § 2452(b)(6).

46.     The question is not whether a student "acquired a foreign language" from an American school, meaning he or she learned initial words from a school as opposed to from immigrant parents. Rather the question is whether the student is capable of receiving "modern foreign language training" from an American school and would improve language skills by visiting and studying in a foreign country.  U.S. students who "acquired" the foreign language of their national heritage can—and many do—receive additional training in that language from American schools. They can also improve their language skills by conducting doctoral research abroad in that language.

47.     The 1998 Final Rule further explained that "excluding . . . the applicant's native language . . . would encourage non-native born United States citizens or resident aliens to acquire an additional foreign language." *Id*. Not so. A "non-native born" student who acquires many additional foreign languages would still be effectively disqualified from Fulbright-Hays research in any country that speaks the same foreign language as the one that person acquired through the person's national heritage. For example, no matter how many languages a Kuwaiti-born doctoral student acquires, she still faces an insurmountable 15-point penalty if she applies to conduct Fulbright-Hays research in *any* Arabic-speaking country. Similarly, a Mexican-born doctoral student could speak 20 languages in addition to Spanish and English. Yet he still could not hope to obtain a Fulbright-Hays Fellowship to study in any Spanish-speaking country.

48.     As such, the 1998 Final Rule does not, as the Department contended, "encourage non-native born United States citizens or resident aliens to acquire an additional foreign language." *Id.* Rather, it transformed the language-proficiency criterion into a language-proficiency penalty that *discourages* "non-native born" students from conducting research in any country that speaks the language of their national heritage.

49.     Nothing in the Fulbright-Hays Act contemplates discouraging "non-native born" students from conducting research in all countries that speak the language of their national heritage. To the contrary, such discouragement is anathema to the Fulbright-Hays Act's purpose of "increas[ing] mutual understanding between the people of the United States and the people of other countries" and "promot[ing] international cooperation for educational and cultural advancement . . . between the United States and the other countries of the world." 22 U.S.C. § 2451.

50.     One commenter objected to the 1998 Final Rule's exclusion of applicants' native languages from counting toward the language-proficiency criterion. *Id.* at 46,361. The Department responded that "a student conducting research in his or her native language should not enjoy the advantage in the competition that the current regulations provide." *Id.* The Department apparently perceived "non-native born" students to have an unfair advantage and therefore transformed a nationality-neutral regulation into a nationality-conscious regulation to impose an offsetting *dis*advantage on those "non-native born" students.

51.     The Fulbright-Hays Act, however, does not authorize the Department to impose non-statutory disadvantages based on nationality. In fact, doing so undermines the Act's purpose of "develop[ing] friendly, sympathetic, and peaceful relations between the United States and the other countries of the world," 22 U.S.C. § 2451. It is also prohibited under Title VI of the 1964

Civil Rights Act, 42 U.S.C. § 2000d, as well as the U.S. Constitution's guarantees of due process and equal protection.

V.   **OTHER FEDERAL PROGRAMS THAT SUPPORT U.S. STUDENTS STUDYING ABROAD TO IMPROVE THEIR FOREIGN-LANGUAGE SKILLS DO NOT PENALIZE STUDENTS FOR SPEAKING THE FOREIGN LANGUAGE OF THEIR NATIONAL HERITAGE**

52.   The federal government has established other programs to support U.S. university students to study abroad to improve their foreign-language skills. But unlike the Department of Education, federal agencies administering those other programs do not treat U.S. students who speak the foreign language of their national heritage as having an unfair advantage in competition. Nor do those other federal agencies penalize such students.

53.   As one example, the Boren Fellowship, established under the David L. Boren National Security Education Act of 1991, supports U.S. graduate students to travel abroad and study "foreign languages, area studies, counterproliferation studies, and other international fields relating to the national security interests of the United States." 50 U.S.C. § 1902(a)(1)(B)(i). The Boren Scholarship, established under the same statute, does the same for U.S. undergraduate students. *Id.* § 1902(a)(1)(A)(i).[3]

54.   The Boren Program is administered by the Secretary of Defense, who must "administer a test of the foreign language skills of each recipient of a scholarship or fellowship . . . to evaluate the progress made by recipients of scholarships and fellowships in developing foreign language skills."

55.   The Department of Defense does not discriminate against U.S. students who acquire a foreign language from their national heritage. To the contrary, the Institute of

_____

[3] Boren recipients must agree to a term of service with a federal agency that has national security responsibilities. 50 U.S.C. § 1902(b)(2). Hence, only U.S. citizens are eligible.

International Education, which implements the Boren Program on behalf of the Department of Defense, boasts that Boren "alumni come from diverse ethnic and socioeconomic backgrounds, including . . . heritage language speakers and naturalized U.S. citizens." Boren Awards, Campus Representatives, Roles and Resources, https://www.borenawards.org/campus-representatives (last visited May 2, 2022).

56. Furthermore, the website listing Boren selection criteria states that "no citizen of the United States may, on the grounds of race, sex, color, religion, age, *national origin*, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." Boren Awards, Official Selection Criteria, https://www.borenawards.org/selection-criteria#scholarships (last visited May 2, 2022) (emphasis added).

57. As another example, the Critical Language Scholarship (CLS) is administered by the Department of State and implemented by the American Council for International Education to support U.S. students to study foreign languages abroad. *See* CLS Application Instructions (2019), https://clscholarship.org/assets/resources/2019_Application_Instructions.pdf (last visited May 2, 2022).

58. Unlike the Department of Education, the Department of State does not discriminate against immigrants and their children who acquire foreign-language skills from their national heritage. To the contrary, CLS provides specific advice to encourage such applicants to apply: "Applicants who are heritage speakers—that is, applicants who have grown up hearing the language from family and who may speak the language at home, but have little or no formal training in the language—may wish to consult faculty in a relevant department, or faculty who

have experience working with heritage speakers in other language departments, to determine which level [*i.e.*, beginner, intermediate, and advanced] is most appropriate for them." *Id.* at 15.

59.     Like the Boren Program, the CLS Program further emphasizes that "[t]he U.S. Department of State and the American Council for International Education do not discriminate on the basis of race, color, *national origin*, sex, age, religion, geographic location, socioeconomic status, disability, sexual orientation or gender identity." *Id.* at 14 (emphasis added). The Department of Education's Fulbright-Hays Instructions tellingly do not contain a similar non-discrimination statement.

60.     The Boren and CLS Programs, among others, demonstrate that the purpose of supporting U.S. students to travel abroad to improve foreign-language skills may be achieved without discouraging or penalizing students who acquired some foreign-language skills from their national heritage.

## VI.     THE DEPARTMENT DENIED PLAINTIFFS' APPLICATIONS FOR THE FULBRIGHT-HAYS FELLOWSHIP BECAUSE THEY ACQUIRED A FOREIGN LANGUAGE FROM THEIR NATIONAL HERITAGE

### Plaintiff Samar Ahmad

61.     Plaintiff Samar Ahmad is a naturalized U.S. citizen who was born in Kuwait and became a naturalized citizen of the United States at the age of 10 in 1996. Ms. Ahmad grew up in an Arabic-speaking household and began to learn English in pre-school.

62.     Ms. Ahmad is a doctoral student in Georgetown University's History Department. She has taken Arabic-language courses as part of her doctoral training with the aim of improving her language skills to a level of professional fluency needed to conduct Ph.D.-level research.

63.     Ms. Ahmad took "Syrian Revolution" and "Prison Literature of the Arab World" at Georgetown University's Center for Contemporary Arab Studies. Both are content courses taught in Arabic to advanced students. She took these classes specifically to improve her reading

and writing skills, with the aim of being able to comprehend and contribute to academic writing in Arabic. Ms. Ahmad's classmates in these courses were a mix of students who acquired Arabic from their national heritage and students who did not.

64.     Ms. Ahmad applied for the Fulbright-Hays Fellowship through Georgetown University in 2021 to conduct research in Jordan, an Arabic-speaking country. Her 2021 Fulbright-Hays application was evaluated based on 105-point scale rather than the 106-point scale used in the 2022 applications.[4] Ms. Ahmad's language referee was Professor Mohammad Alahmad, the instructor in both of her Georgetown Arabic-language courses. He rated her to be "functionally equivalent to a well-educated native speaker." *See* Ahmad Language Referee Form at 42 (attached as Exhibit 3). Ms. Ahmad would not have achieved this level of fluency without taking Arabic-language courses at Georgetown and other schools.

65.     Ms. Ahmad's Fulbright-Hays application was evaluated by two anonymous reviewers appointed by the Department.

66.     Ms. Ahmad's first reviewer gave her 56 out of 60 possible points for the "Quality of Proposed Project" evaluation category and 5 out of 5 possible points for the "Competitive Preference Priority" evaluation category. *See* Ahmad Technical Review No. 1 at 1 (attached as Exhibit 4).

---

[4] In 2022, a new "Promoting Equity" criterion was added as one of the Secretary's Priorities under § 622(d)(2) to give two points to doctoral students who attend "Historically Black colleges and universities," "Minority-serving institutions," and "Tribal colleges and universities." Dep't of Education, *Application for New Awards; Fulbright-Hays Doctoral Dissertation Research Abroad Fellowship Program*, 87 Fed. Reg. 5,804 (Feb. 2, 2022). At the same time, the Department reduced the point value of the "Academic Fields" criterion—another one of the Secretary's Priorities under § 622(d)(2)—from three to two points. No other changes were made to the evaluation criteria. The net result is that the total possible points increased by one between 2021 and 2022.

67.     Ms. Ahmad's first reviewer also gave her only 23 out of 40 possible points for the "Qualification of the Applicant" evaluation category, with the following breakdown:

      a.   8 out 10 possible points for the "overall strength of the applicant's graduate record";

      b.   10 out 10 possible points for "demonstrat[ing] a strength in area studies relevant to the proposed project";

      c.   0 out of 15 possible points for "proficiency in one or more of the languages … of the country or countries of research"; and

      d.   5 out of 5 possible points in "ability to conduct research in a foreign cultural context."

*Id.* at 4-5.

68.     Ms. Ahmad's first reviewer gave her 0 out 15 points for the language-proficiency criterion under the "Qualification of the Applicant" category, explaining: "Since Arabic is the native language of the applicant, the question of language proficiency is not applicable." Ahmad Technical Review No. 1 at 5. Ms. Ahmad's first reviewer would have given her the full 15 points if the Department's language-proficiency criterion based on 34 C.F.R. § 622.21(c)(3) did not require her to receive 0 points for speaking the language of her national heritage.

69.     Ms. Ahmad's second reviewer gave her 52 out of 60 possible points for the "Quality of Proposed Project" evaluation category and 5 out of 5 possible points for the "Competitive Preference Priority" evaluation category. *See* Ahmad Technical Review No. 2 at 1 (attached as Exhibit 5).

70.     Ms. Ahmad's second reviewer gave her only 25 out of 40 possible points for the "Qualification of the Applicant" category, with the following breakdown:

    a.   10 out 10 possible points for the "overall strength of the applicant's graduate record";

    b.   10 out 10 possible points for "demonstrat[ing] a strength in area studies relevant to the proposed project";

    c.   0 out of 15 possible points for "proficiency in one or more of the languages … of the country or countries of research"; and

    d.   5 out of 5 possible points in "ability to conduct research in a foreign cultural context."

*Id.* at 4-5.

71.    Ms. Ahmad's second reviewer gave her 0 out 15 points for the language-proficiency criterion under the "Qualification of the Applicant" category because "the applicant identifies as a native speaker of Arabic." Ms. Ahmad's second reviewer would have given her the full 15 points for language proficiency if the Department's regulation at 34 C.F.R. § 622.21(c)(3) did not require her to receive 0 points for speaking the language of her national heritage.

72.    Ms. Ahmad's first reviewer gave her a total of 84 out of 105 points, and Ms. Ahmad's second reviewer gave her a total of 82 out of 105 possible points. Based on these scores, the Department denied Ms. Ahmad's Fulbright-Hays application.

73.    Georgetown University asked the Department to reconsider Ms. Ahmad's application and adjust her score because the first reviewer deducted two points based on the mistaken belief that Ms. Ahmad failed to attach her graduate transcripts. The Department responded that "the oversight of the graduate transcripts by the reviewer did not constitute a substantive problem in the reviewing process. Furthermore, the applicant is not within funding or

alternate status with or without the adjusted score. The applicant's score will not be adjusted." Dr. Pamela Maimer's Letter to Georgetown (attached as Exhibit 5).

74.    If the Department did not require native speakers to receive 0 out of 15 possible points for foreign-language proficiency, Ms. Ahmad's evaluators would each have given her 15 more points for her Arabic-language skills. Her evaluation scores would therefore have been 99 and 97 points, respectively. Such scores would have placed Ms. Ahmad well within the range of Fulbright-Hays funding, even without any adjustment for what the Department admitted was "the oversight of the graduate transcripts by the [first] reviewer," *id.*

75.    While Ms. Ahmed acquired Arabic from her national heritage, she was not professionally fluent in Arabic based on heritage alone. She only achieved professional-level fluency in Arabic by taking courses in American schools, including Georgetown University's Center for Contemporary Arab Studies.

76.    If Ms. Ahmad had not taken any Arabic-language courses, she would not have been "functionally equivalent to a well-educated native speaker," *see* Ahmad Language Referee Form at 42, and instead would have been considered a "heritage speaker" under the Department's language-proficiency criterion, *see* Fulbright-Hays Instructions at 46.

77.    If Ms. Ahmad had been a "heritage speaker," both of her reviewers would have awarded her 10 out of 15 possible points for language proficiency, instead of 0. In that scenario, Ms. Ahmad's evaluation scores of 84 and 82 would have increased to 94 and 92, respectively. Such scores would still have placed her within the range of Fulbright-Hays funding. In other words, under the Department's language-proficiency criterion, Ms. Ahmad's decision to improve her Arabic-language skills by taking coursework at Georgetown and elsewhere became an

impediment—indeed, the determinative impediment—that prevented her from obtaining a Fulbright-Hays Fellowship.

78.     Ms. Ahmad has reapplied for the 2022 Fulbright-Hays Fellowship to study in Jordan, an Arabic-speaking country. Because she acquired Arabic as part of her national heritage, her 2022 application will again be penalized under 34 C.F.R. § 622.21(c)(3) and guidance implementing that regulation.

**Plaintiff Edgar Ulloa Lujan**

79.     Plaintiff Ulloa Lujan is a U.S. permanent resident and citizen of Mexico. He plans to become a U.S. citizen when he becomes eligible for naturalization in 2023.

80.     Mr. Ulloa Lujan grew up in Juarez, Mexico, across the border from El Paso, Texas. He first immigrated to the United States in 2001 and began to attend the University of Texas at El Paso in 2008.

81.     Mr. Ulloa Lujan is a doctoral student in Georgetown's Spanish Department and plans to enter a teaching career in the United States after graduating.

82.     Mr. Ulloa Lujan applied for the Fulbright-Hays Fellowship to conduct dissertation research in Spain and the United Kingdom twice, first in 2020 and again in 2021. His 2020 and 2021 Fulbright-Hays applications were evaluated based on 105-point scale rather than the 106-point scale used in the 2022 applications. *Supra* at ¶ 64.

83.     Mr. Ulloa Lujan's 2020 application was evaluated by two reviewers from "Panel#6 East Asia 2," even though his research proposal did not involve traveling to East Asia. Ulloa Lujan Ulloa Lujan 2020 Technical Evaluation No. 1 at 2 (attached as Exhibit 7); Ulloa Lujan 2020 Technical Evaluation No. 2 at 2 (attached as Exhibit 8).

84.     Upon information and belief, Mr. Ulloa Lujan's 2020 application to conduct research in Western Europe was reviewed by the "East Asia 2" panel because his application was

combined and mixed up with an unrelated application from another student who proposed to perform research in Japan.

85.    Mr. Ulloa Lujan's first 2020 reviewer correctly described his research proposal as "an interesting project to explore narco-orientalism and how the so-called 'Drug War' is the continuation of narco-orientalism, a perspective of analysis and criticism on discursive and oriental aesthetics in drug narratives representations for six months of research in Spain and the United Kingdom." Ulloa Lujan 2020 Technical Evaluation No. 1 at 2.

86.    But the same reviewer also said that "[t]he applicant proposed an interesting project to explore whether the Japanese video art scene is key to understanding global video art and the nature of the analogue medium. The project is important because it will potentially contribute to informing global understandings of the medium through Japanese artists' international connections." *Id.* at 5. The evaluator further stated "the applicant is able to conduct the proposed research in Japan. He had visits to Spain and the United Kingdom although the details of them are not clear." *Id.*

87.    Upon information and belief, the reviewer made these conflicting comments because portions of Mr. Ulloa Lujan's research proposal in Spain and the United Kingdom were mixed up with portions of another, unrelated proposal in Japan and mistakenly presented to the "East Asia 2" panel as a single proposal. The reviewer found details of Mr. Ulloa Lujan's proposed visits to Spain and the United Kingdom to be "not clear" because the mix-up resulted in an incomplete and unclear proposal.[5]

---

[5] Georgetown University asked the Department to investigate why Mr. Ulloa Lujan's reviewer "mention[ed] Japanese video art several times, which was not part of [his] proposed research." August 2020 Email Exchange between Dr. Pamela Maimer and Georgetown University (attached as Exhibit 9). The Department refused and instead sent the following non-responsive reply: "The comment under review in 1.2 *'The relationship of the research to the literature on the topic and*

88.    Both of Mr. Ulloa Lujan's 2020 reviewers penalized him for his Spanish-speaking heritage, as the Department's language-proficiency criterion required. His first 2020 reviewer gave him only 5 out of 15 possible points for Spanish language proficiency, even though he is fluent, because "[t]he applicant is a bilingual speaker of Spanish (native) and English." Ulloa Lujan 2020 Technical Evaluation No. 1 at 4. His second 2020 evaluator also gave him 5 out of 15 possible points for Spanish language proficiency because "[t]he candidate also seems to be a heritage speaker of Spanish." Ulloa Lujan 2020 Technical Evaluation No. 2 at 4.

89.    The Department denied Mr. Ulloa Lujan's 2020 application to the Fulbright-Hays Fellowship, at least in part because the Department's language-proficiency criterion required reviewers to penalize him for speaking Spanish as part of his national heritage.

90.    Mr. Ulloa Lujan applied for the Fulbright-Hays Fellowship again in 2021 to conduct dissertation research in Spain and the United Kingdom. This time, his application appears to have been evaluated by two reviewers from the correct regional panel, *i.e.*, "Panel #11 – Western Hemisphere 2." Ulloa Lujan 2021 Technical Evaluation No. 1 at 2 (attached as Exhibit 10); Ulloa Lujan 2021 Technical Evaluation No. 2 at 2 (attached as Exhibit 11).

91.    Both of Mr. Ulloa Lujan's 2021 reviewers penalized him for being a native Spanish speaker, as the Department's language-proficiency criterion required. Mr. Ulloa Lujan's first 2021 evaluator gave him 0 out of 15 possible points under the language-proficiency criterion, explaining: "Applicant is a native Spanish speaker, and … [t]herefore, they do not meet the

---

*to major theoretical issues in the field, and the project's originality and importance in terms of the concerns of the discipline'* was awarded the maximum points (10). The same issue was raised in *General Comments*, but *General Comments* are not assigned points and do not affect the overall score. No changes will be made." *Id.* In other words, because the reviewer discussed Japanese video art in sections where no points were explicitly deducted, the Department saw no reason to investigate why the reviewer discussed travelling to Japan to study Japanese video art when Mr. Ulloa Lujan's research proposal did not involve travelling to Japan or studying Japanese video art.

language requirements for the Fulbright DDRA." Ulloa Lujan 2021 Technical Evaluation No. 1 at 5. Mr. Ulloa Lujan's second reviewer also gave him a score of 0 out of 15 possible points for the language-proficiency criterion because "applicant is a native speaker of Spanish." Ulloa Lujan 2021 Technical Evaluation No. 2 at 5.

92.     The Department of Education denied Mr. Ulloa Lujan's 2021 application to the Fulbright-Hays Fellowship, at least in part because the Department's language-proficiency criterion required him to receive 0 out of 15 possible points for language proficiency on account of his national heritage, even though he is fluent in Spanish.  Mr. Ulloa Lujan is deterred from reapplying because the 15-point penalty based on his national heritage presents an insurmountable barrier to obtaining the award.

## VII.   PLAINTIFFS EXPERIENCED AND WILL CONTINUE TO EXPERIENCE CONCRETE AND PARTICULARIZED INJURIES AS A RESULT OF THE DEPARTMENT'S UNLAWFUL LANGUAGE-PROFICIENCY CRITERION

93.     Ms. Ahmad's and Mr. Ulloa Lujan's 2021 Fulbright-Hays applications each received 15 fewer points than they would have received if the Department's language-proficiency criterion did not penalize them for speaking the language of their national heritage.

94.     Ms. Ahmad and Mr. Ulloa Lujan were denied Fulbright-Hays Fellowships because of the 15-point penalty the Department's language-proficiency criterion imposed on their applications.

95.     Ms. Ahmad has reapplied for the Fulbright-Hays Fellowship in the 2022 application cycle, which opened on February 5, 2022. Her 2022 application will face a 15-point penalty based on her national heritage, which presents an insurmountable barrier to obtaining the award.

96.     Mr. Ulloa Lujan is interested in reapplying to the Fulbright-Hays Fellowship in the future. But he is deterred from doing so because the 15-point penalty based on his national heritage presents an insurmountable barrier to obtaining the award.

## CLAIMS FOR RELIEF

### Count I

### The Department's Language-Proficiency Criterion
### Is Not Authorized under the Fulbright-Hays Act

97.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

98.     For decades after the enactment of the Fulbright-Hays Act of 1961, the Department's regulation concerning the language-proficiency criterion for the Fulbright-Hays Fellowship did not treat differently immigrants and children of immigrants who spoke the foreign language of their national heritage. *See* 34 C.F.R. § 662.33(b)(2)(ii) (1997).

99.     The Department departed from this approach in 1998 and revised its regulation to prohibit U.S. students from using the foreign language of their national heritage to satisfy the language-proficiency requirement of the Fulbright-Hays Fellowship. 34 C.F.R. § 662.21(c)(3).

100.    The Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) penalizes U.S. students who speak the foreign language of their national heritage when they apply to conduct Fulbright-Hays research in any country that speaks the same language.

101.    The size of the penalty is now 15 points on a scale of 106 points for U.S. students who (1) speak the foreign language of their national heritage; and (2) have undertaken training to achieve professional fluency in that language. *See* Fulbright-Hays Instructions at 46.

102.    The penalty is smaller—5 points—for U.S. students who (1) speak the foreign language of their national heritage but (2) have not undertaken training to achieve professional fluency in that language. *Id.*

103.    The Department's language-proficiency criterion based on § 662.21(c)(3) is unlawful because the Fulbright-Hays Act does not authorize the Department to impose any competitive penalties on U.S. students who speak the foreign language of their national heritage.

104.    Three years after enacting the Fulbright-Hays Act, Congress enacted Title VI of the 1964 Civil Rights Act, which states: "No person in the United States shall, on the ground of . . . national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. This pronouncement forecloses the Department from interpreting the Fulbright-Hays Act to authorize competitive penalties on U.S. students who speak the foreign language of their national heritage.

105.    The Department's Fulbright-Hays language-proficiency criterion based on § 662.21(c)(3) also discourages U.S. students who speak the foreign language of their national heritage from undertaking training to achieve professional-level fluency in that language by imposing a larger penalty on fluent speakers than it imposes on less-than-fluent speakers of a heritage language. This perverse incentive contradicts the very purpose of the Fulbright-Hays Act to promote language training in U.S. schools.

106.    The Department's Fulbright-Hays language-proficiency criterion based on § 662.21(c)(3) further contradicts the purpose of the Fulbright-Hays Act to promote cultural exchange, because it discourages U.S. students who speak the foreign language of their national heritage from conducting doctoral research in any country that speaks that same foreign language.

107.    Because the Department's Fulbright-Hays language-proficiency criterion is not authorized by the Fulbright-Hays Act and in fact contradicts the Act's text and purpose, it is invalid and must be declared unlawful and set aside, and the Department must be enjoined from using it.

## Count II

### The Department's Language-Proficiency Criterion Violates the Constitution's Guarantees of Due Process and Equal Protection

108.    Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

109.    The Constitution forbids the federal government from denying due process and equal protection of the laws. *See Davis v. Passman*, 442 U.S. 228, 234 (1979) ("In numerous decisions, this Court has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.") (collecting cases).

110.    The Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) treats applicants unequally based on their national heritage.

111.    Students who are "non-native born United States citizens or resident aliens," 63 Fed. Reg. 46,359, may not use the foreign language of their national heritage to satisfy the Fulbright-Hays Fellowship's foreign-language requirement. This is so even if the "non-native born" student achieved his or her proficiency through coursework in U.S. schools. In contrast, a "native-born" United States student who is equally proficient in the same language—perhaps by taking the same coursework as the "non-native-born" student—may use that foreign language to satisfy the Fulbright-Hays Fellowship's foreign-language requirement.

112.    The extent of this unequal treatment is easily measured. Acquiring a language from one's national heritage carries a 15-point penalty on a 106-point evaluation scale. Plaintiffs' scores were docked more than 14%—and will be similarly docked if or when they apply again. Given

29

the competitive nature of the Fulbright-Hays Fellowship, such a penalty is a functional disqualification. Thus, for example, a U.S. student with Sudanese parentage is barred from conducting Fulbright-Hays dissertation research in *any* Arabic-speaking country, from Morocco to Oman. Likewise, a U.S. student with Mexican heritage is barred from conducting Fulbright-Hays dissertation research in *any* Spanish-speaking country, from Spain to Chile. In contrast, their classmates who do not have Arabic- or Spanish-speaking heritage face no such barrier.

113.    Disparate treatment of U.S. persons based on national origin is subject to strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 371–72 (1971) ("[T]he Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny."). To pass strict scrutiny, disparate treatment must be narrowly tailored to serve a compelling government interest.

114.    The Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) does not serve a compelling government interest. In fact, it undermines the government's interests, as expressed in the Fulbright-Hays Act, in promoting foreign-language training in U.S. schools by discouraging immigrants and their children from obtaining additional training to the point of professional fluency in the language of their national heritage.

115.    It also undermines the government's interests, as expressed in the Fulbright-Hays Act, in promoting educational and cultural exchange by discouraging immigrants and their children from conducting Fulbright-Hays research in any country in which the language of their national heritage is spoken.

116.    Even if the Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) somehow serves the government's interest in foreign-language training or international exchange, it is not narrowly tailored. Other government-sponsored scholarships to

support improving the foreign-language skills of U.S. students through international exchange, such as the Boren and CLS Programs, do not penalize applicants based on their national heritage.

117. The Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) does not pass constitutional muster and must be declared unlawful and enjoined.

## Count III

### The Department's Language-Proficiency Criterion Violates Its Obligations to Comply with and Enforce Title VI of the 1964 Civil Rights Act

118. Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

119. The 1964 Civil Rights Act states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.

120. The Department of Education is responsible for enforcing Title VI with respect to financial assistance programs it administers. Such enforcement is not committed to the Department's discretion. *Adams v. Richardson*, 480 F.2d 1159, 1162 (D.C. Cir. 1973) ("Title VI not only requires the agency to enforce the Act, but also sets forth specific enforcement procedures.").

121. Regulations at 34 C.F.R. § 100.2 provide that Title VI's requirements "appl[y] to any program to which Federal financial assistance is authorized to be extended to a recipient under a law administered by the Department [of Education.]"

122. The Fulbright-Hays Fellowship is a program for which Federal financial assistance is authorized to be extended to recipients (*i.e.*, universities) under a law administered by the

Department of Education (*i.e.*, the Fulbright-Hays Act). It is therefore subject to Title VI's prohibition against nation-of-origin discrimination.

123.     The Department of Education's policy of penalizing Fulbright-Hays applicants who acquire relevant foreign languages from their national heritage constitutes nation-of-origin discrimination prohibited by Title VI.

124.     The Department's language-proficiency criterion therefore violates its obligation to comply with and enforce Title VI's prohibition against nation-of-origin discrimination and must be declared unlawful and enjoined.

## **Count IV**

### **Denying Plaintiffs' Fulbright-Hays Applications Because They Acquired a Foreign Language Through Their National Heritage Is Arbitrary and Capricious**

125.     Plaintiffs reallege and incorporate by reference the foregoing allegations as if fully set forth herein.

126.     Section 706(2) of the Administrative Procedure Act ("APA") requires the Court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

127.     The Department's denials of Plaintiffs' Fulbright-Hays applications are final agency actions subject to review under the APA.

128.     The Fulbright-Hays Fellowship provides federal financial assistance to U.S. doctoral students to conduct dissertation research abroad in a foreign language. Proficiency in the applicable foreign language is a prerequisite for the fellowship. 34 C.F.R. § 662.3.

129.     The Department applied its unlawful language-proficiency criterion to deny Ms. Ahmad's application for federal financial assistance under the Fulbright-Hays Fellowship to

conduct research in Jordan because she acquired Arabic—the foreign language needed for that research—from her Palestinian heritage.

130.    The Department applied its unlawful language-proficiency criterion to deny Mr. Ulloa Lujan's application for federal financial assistance under the Fulbright-Hays Fellowship to conduct research in Spain because he acquired Spanish—the foreign language needed for that research—from his Mexican heritage.

131.    It is arbitrary and capricious to exclude U.S. students from federal financial assistance under the Fulbright-Hays Fellowship to conduct dissertation research abroad simply because those students acquired the initial foreign-language skills from their national heritage.

132.    The Department's denials of Ms. Ahmad's and Mr. Ulloa Lujan's applications for the Fulbright-Hays Fellowship based on its unlawful language-proficiency criterion must be invalidated, and the discriminatory criterion in 34 C.F.R. § 662.21(c)(3) must be set aside.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs respectfully request that the Court find Defendants have committed the violations alleged and described above, and issue the following:

A.  A declaration that the Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) is unlawful and not authorized by the Fulbright-Hays Act of 1961;

B.  A declaration that the Department's language-proficiency criterion based on § 662.21(c)(3) violates the Constitution's guarantees of due process and equal protection;

C.  A declaration that the Department's language-proficiency criterion based on 34 C.F.R. § 662.21(c)(3) violates Title VI's prohibition against nation-of-origin discrimination;

D.  A declaration that the Department's reliance on § 662.21(c)(3) to deny Plaintiffs' Fulbright-Hays applications was arbitrary and capricious under the APA;

E.  Preliminary and permanent injunctive relief requiring the Department to allow U.S. students to use the foreign language of their national heritage to satisfy the language-proficiency criterion of the Fulbright-Hays Fellowship;

F.  Preliminary and permanent injunctive relief prohibiting the Department from penalizing Fulbright-Hays applicants for acquiring the foreign language to be used during the proposed research through their national heritage;

G.  An injunction requiring the Department to award Plaintiffs the Fulbright-Hays Fellowship as long as their 2021 applications qualify with the full 15 points assign to foreign-language proficiency; and

H.  Nominal damages of $1.

## JURY DEMAND

Plaintiffs demand a trial by jury of any triable issues.

May 3, 2022                                         Respectfully submitted,

s/ Cory R. Liu
_____
Cory R. Liu
Texas Bar No. 24098003
ASHCROFT SUTTON REYES LLC
919 Congress Ave, Suite 1325
Austin, TX 78701
(512) 370-1800
cliu@ashcroftlawfirm.com

/s/ Sheng Li
_____
Sheng Li
*Pro Hac Vice Forthcoming*
Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
(202) 869-5210
Sheng.Li@ncla.legal

/s/ John J. Vecchione
_____
John J. Vecchione
*Pro Hac Vice Forthcoming*
Senior Litigation Counsel
John.Vecchione@ncla.legal