IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| EDGAR ULLOA LUJAN, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br>et al.,<br><br>            Defendants. | No. 3:22-cv-00159-DCG |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................. 3

I.      Legislative and Regulatory History ..................................................................... 3

II.     The Foreign-Language Criterion ......................................................................... 6

III.    The 2022 and 2023 DDRA Program Grant Cycles ............................................. 7

IV.     Plaintiff Gonzalez's DDRA Candidacy .............................................................. 9

V.      Procedural History .............................................................................................. 9

LEGAL STANDARD ....................................................................................................... 11

ARGUMENT ................................................................................................................... 12

I.      Plaintiffs' Claims Seeking 2022 Funds Cannot Succeed Because They Are Moot ......... 12

II.     All of Plaintiffs' Claims are Unlikely to Succeed on the Merits ..................................... 15

        A.      The Challenged Regulation is Consistent with the Department's Authority to
                Implement the Fulbright-Hays Act. ..................................................... 15

        B.      Plaintiffs' Equal Protection Claims are Unlikely to Succeed on the Merits. ........ 19

                1.      Plaintiffs Have Not Shown that the Department had a Discriminatory
                        Motive for issuing the Foreign-Language Criterion ................................. 20

                2.      The Department Rationally Determined that the Foreign-Language
                        Criterion Advances the Purpose of the Fulbright-Hays Program ............. 24

        C.      The Balance of Harms and Public Interest do not Support a Preliminary Injunction
                ........................................................................................................... 25

CONCLUSION ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Cases**

*Barnhart v. Walton*,
    535 U.S. 212 (2002) .......................................................................................................... 16

*Chem. Mfrs. Ass'n v. Nat. Res. Def. Council*,
    470 U.S. 116 (1985) .......................................................................................................... 16

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) .......................................................................................................... 16

*City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*,
    24 F.3d 1421 (D.C. Cir. 1994) ................................................................... 2, 12, 13, 14

*County of Suffolk v. Sebelius*,
    605 F.3d 135 (2d Cir. 2010) ......................................................................... 13, 14, 15

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) ........................................................................................ 11

*Easom v. US Well Servs., Inc.*,
    37 F.4th 238 (5th Cir. 2022) ......................................................................................... 17

*Envtl. Integrity Project v. E.P.A.*,
    425 F.3d 992 (D.C. Cir. 2005) .................................................................................... 26

*Garcia v. Gloor*,
    618 F.2d 264 (5th Cir. 1980) ................................................................................. 2, 20

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) .......................................................................................................... 24

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) .......................................................................................................... 20

*Harris v. Hahn*,
    827 F.3d 359 (5th Cir. 2016) ....................................................................................... 25

*Heller v. Doe ex rel. Doe*,
    509 U.S. 312 (1993) .......................................................................................................... 24

*Hines v. Quillivan*,
    982 F.3d 266 (5th Cir. 2020) ................................................................................. 24, 25

*Iron Arrow Honor Soc'y v. Heckler*,
    464 U.S. 67 (1983) ............................................................................................................ 12

*Larsen v. U.S. Navy*,
    525 F.3d 1 (D.C. Cir. 2008) ............................................... 12

*Lewis v. Ascension Par. School Bd.*,
    662 F.3d 343 (5th Cir. 2011) ......................................... 20, 24

*Miami-Dade Cty. v. E.P.A.*,
    529 F.3d 1049 (11th Cir. 2008) .......................................... 26

*Modvoc Lassen Indian Housing Auth. v. U.S. Dep't of Housing & Urban Dev.*,
    881 F.3d 1181 (10th Cir. 2017) ..................................... 14, 15

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................... 11

*Overton v. City of Austin*,
    871 F.2d 529 (5th Cir. 1989) ............................................ 21

*Pauley v. BethEnergy Mines, Inc.*,
    501 U.S. 680 (1991) ...................................................... 16

*Perrin v. United States*,
    444 U.S. 37 (1979) ....................................................... 17

*Pers. Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979) ...................................................... 21

*Ridgely v. FEMA*,
    512 F.3d 727 (5th Cir. 2008) ............................................ 11

*Stern v. Tarrant County Hosp. Dist.*,
    778 F.2d 1052 (5th Cir. 1985) ........................................... 25

*U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty.*,
    712 F.3d 761 (2d Cir. 2013) ............................................. 18

*Vasquez v. McAllen Bag & Supply Co.*,
    660 F.2d 686 (5th Cir. 1981) ............................................ 20

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) ......................................... 20, 21

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
    429 U.S. 252 (1977) ...................................................... 21

*W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*,
    734 F.2d 1570 (D.C. Cir. 1984) .......................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) ................................................................................ 11

*Your Home Visiting Nurse Servs., Inc. v. Shalala*,
    525 U.S. 449 (1999) ............................................................................ 16

**Statutes**

5 U.S.C. § 702 ......................................................................................... 14

22 U.S.C. § 2451 ................................................................................... 1, 3

22 U.S.C. § 2452 ............................................................................... *passim*

50 U.S.C. § 1902 ..................................................................................... 18

**Rules**

Fed. R. Civ. P. 12 .................................................................................... 15

**Regulations**

34 C.F.R. § 662.1 ................................................................................... 1, 4

34 C.F.R. § 662.3 ...................................................................................... 4

34 C.F.R. § 662.10 .................................................................................... 5

34 C.F.R. § 662.20 .................................................................................... 5

34 C.F.R. § 662.21 ............................................................................. *passim*

34 C.F.R. § 662.22 .................................................................................... 5

34 C.F.R. § 663.21 ................................................................................ 5, 18

34 C.F.R. §§ 75.217 ............................................................................. 5, 21

63 Fed. Reg. 46,358 (Aug. 31, 1998).................................................. *passim*

87 Fed. Reg. 15,213 (Mar. 17, 2022)................................................... 5

Consolidated Appropriations Act of 2022,
    Pub. L. No. 117-103, 136 Stat. 495 ......................................... 4, 12, 14

**Other**

Dept. of Ed. Agency Rule List (Fall 2022),
    *available at*
    https://www.reginfo.gov/public/do/eAgendaMain?operation=OPERATION_GET_AGENCY
    _RULE_LIST&currentPub=true&agencyCode=&showStage=active&agencyCd=1800&csrf_
    token=737DA8331380086C1926655266E205B50F063058E5D68E39800A9A7BBCE2846B
    9B9E9A74BB1ACD83980497CC7807E3EA053B ........................................... 10, 11, 25, 26

DDRA Applicant Information, Dept. of Ed.,
    https://www2.ed.gov/programs/iegpsddrap/applicant.html ................................. 8, 27

DDRA Funding Status, Dept. of Ed.,
*available at* https://www2.ed.gov/programs/iegpsddrap/funding.html ................................... 8

Merriam-Webster Dictionary (online ed.),
*available at* https://www.merriam-webster.com/dictionary/training ..................................... 18

OIRA, Pending EO 12866 Regulatory Review, Fulbright-Hays Doctoral Dissertation Research
Abroad Fellowship Program (received Jan. 20, 2023),
*available at* https://www.reginfo.gov/public/do/eoDetails?rrid=293064 ........................ 11, 26

Oxford Pocket Dictionary of Current English (Oxford Univ. Press),
*available at* https://www.encyclopedia.com/social-sciences-and-law/law/law/foreign ......... 17

Congress passed the Fulbright-Hays Act in 1961 to promote foreign language training in United States schools. 22 U.S.C. §§ 2451, 2452(b)(6). Under authority of that statute and consistent with its purpose, the Department of Education (the "Department") established the Fulbright-Hays Doctoral Dissertation Research Abroad ("DDRA") program, which is designed "to contribute to the development and improvement of the study of modern foreign languages and area studies in the United States" by financing scholars to conduct research abroad. 34 C.F.R. § 662.1(a). To that end, the Department promulgated regulations setting forth the selection criteria for assessing applications to the DDRA program, which have been in place since 1998. Among other things, the Department considers "[t]he applicant's proficiency in one or more of the languages (*other than English and the applicant's native language*) of the country or countries of research, and the specific measures to be taken to overcome any anticipated language barriers[.]" 34 C.F.R. § 662.21(c) (emphasis added) (the "Foreign-Language Criterion"). The Department explained that the purpose of the Foreign-Language Criterion—including its carve-out for both English language and native-language skills—is to fulfill the purposes of the Fulbright-Hays Act by emphasizing foreign language acquisition through American schools.

Plaintiff Gonzalez is a native Spanish speaker who applied to conduct doctoral dissertation research in Mexico through the DDRA program during the 2022 application cycle. Plaintiff Gonzalez alleges that she was not selected for the 2022 DDRA cycle because of the Foreign-Language Criterion. Arguing that the regulation was promulgated without agency authority and that it violates equal protection principles, Plaintiff Gonzalez seeks two forms of preliminary relief: (1) that the Court require Defendants to reevaluate her 2022 application for the DDRA fellowship without applying the challenged regulation; and (2) that the Court require Defendants to suspend the regulation for the 2023 application cycle so that she can reapply "without facing the 'native

1

language penalty." Mot. at 1, ECF No. 25. Plaintiffs' motion for preliminary injunction should be denied for several reasons.

First, Plaintiffs' claims with respect to the FY 2022 application cycle are moot. The funds that Congress appropriated for the DDRA program in FY 2022 have been fully disbursed, and the appropriation for that cycle has expired. "It is a well-settled matter of constitutional law that when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1424 (D.C. Cir. 1994).

Second, Plaintiff Gonzales is unlikely to succeed on the merits of her challenge even with respect to her claims pertaining to the upcoming 2023 selection cycle. The Foreign-Language Criterion is consistent with the Fulbright-Hays Act, which authorizes the Department to "promote modern foreign language training" in U.S. schools. The Department reasonably determined that the challenged regulation is an appropriate mechanism to prioritize acquisition of language skills obtained through American schools—and that determination is entitled to deference.

Plaintiffs' Equal Protection claims are also unlikely to succeed. The Foreign-Language Criterion does not discriminate on the basis of national origin as Plaintiffs contend in this case. Rather, the challenged regulation considers only an applicant's source of language acquisition— not their national origin. The Fifth Circuit has held that differentiating based on language is not, in and of itself, an automatic proxy for national origin when considering discrimination claims. *See Garcia v. Gloor,* 618 F.2d 264, 268-71 (5th Cir. 1980). In this case, the Foreign-Language Criterion survives scrutiny because it was motivated by the non-discriminatory goals of encouraging language training in American schools and promoting the work of American educational systems in training students to acquire new languages.

2

Finally, the balance of harms and public interest do not support a preliminary injunction here. A rulemaking proceeding is already underway to consider the Foreign-Language Criterion, and a preliminary injunction would harm the Department and the public by undermining that process.

In the meantime, Plaintiff Gonzalez will not suffer irreparable harm absent an injunction. The Department has announced that the Foreign-Language Criterion will have minimal impact in the upcoming 2023 grant cycle; the criterion will be allocated only 1 point out of the approximately 106 total maximum total points available for the full set of evaluation criteria (rather than the 15 points this criterion has been assigned in past years). Under these circumstances, the challenged regulation is exceedingly unlikely to present a material obstacle to Plaintiffs' forthcoming application.

Accordingly, Plaintiffs' Motion for Preliminary Injunction should be denied.

## FACTUAL BACKGROUND

### I.     Legislative and Regulatory History

Congress passed the Fulbright-Hays Act in 1961 to enable the federal government "to increase mutual understanding between the people of the United States and the people of other countries by means of educational and cultural exchange." 22 U.S.C. § 2451. The Act aims to accomplish that goal by "demonstrating the educational . . . developments[] and achievements of the people of the United States," *id*., and by "promot[ing] international cooperation for educational and cultural achievement, *id.* In particular, the statute authorizes the President to provide for "promoting modern foreign language training and area studies in United States schools, colleges, and universities by supporting visits and study in foreign countries by teachers and prospective

teachers . . . for the purpose of improving their skill in languages," and by financing visits by teachers from other countries to the United States for the purpose of "participating in foreign language training."  22 U.S.C. § 2452(b)(6). The President has delegated his authority under this provision to the Department of Education. *See* Exec. Order No. 11,034 § 4 (June 25, 1962), as amended by Exec. Order No. 12,608 § 12 (Sept. 9, 1987).

Under the authority of § 2452(b)(6), the Department established the DDRA fellowship. The DDRA fellowship "is designed to contribute to the development and improvement of the study of modern foreign languages and area studies in the United States by providing opportunities for scholars to conduct research abroad." 34 C.F.R. § 662.1(a). To promote these aims, the DDRA program provides grants to colleges and universities that fund individual doctoral students to conduct research in other countries, in modern foreign languages and area studies for periods of six to twelve months. *Id.* § 662.1(b). The DDRA fellowship, along with other Fulbright-Hays programs, is funded by a specific Congressional appropriation. *See, e.g.*, Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, 136 Stat. 495, § 502.

A student is eligible for a DDRA fellowship only if the student:

> (a) (1) Is a citizen or national of the United States; or
>     (2) Is a permanent resident of the United States;

> (b) (1) Is a graduate student in good standing at an institution of
>         higher education; and
>     (2) When the fellowship period begins, is admitted to candidacy
>         in a doctoral degree program in modern foreign languages and
>         area studies at that institution;

> (c) Is planning a teaching career in the United States upon
>     completion of his or her doctoral program; and

> (d) Possesses sufficient foreign language skills to carry out the
>     dissertation research project.

4

34 C.F.R. § 662.3.

The Department initiates each annual DDRA fellowship application cycle by publishing a Notice Inviting Applications for New Awards ("NIA"). *See, e.g.*, 87 Fed. Reg. 15,213 (Mar. 17, 2022) (FY 2022 NIA). A student must apply for the DDRA fellowship through the institution of higher education in which the individual is enrolled, 34 C.F.R. § 662.10, and the Secretary considers applications that have been screened and submitted by eligible institutions. 34 C.F.R. § 662.20(a). The Secretary then presents recommendations regarding who should receive fellowships to the J. William Fulbright Scholarship Board. *Id.* § 662.20(f). The Board reviews the Secretary's recommendation and approves recipients on the basis of the Secretary's recommendations and information on budget, political sensitivity, and feasibility. *Id.* § 662.22(a).

Under the DDRA Program, the Secretary recommends applicants for awards based on criteria that are set forth in the Department's regulations. *See* 34 C.F.R. § 662.21. The selection criteria fall into three categories: (1) quality of proposed project; (2) qualifications of the applicant; and (3) priorities to be determined by the Secretary on an annual basis. *Id.* The Department then assigns "the maximum possible score for each criterion" as set forth within the NIA for each annual cycle. *See id.* § 663.21(a). During the 2022 application cycle, for example, the Department allocated 106 maximum possible points across all DDRA application criteria combined. *See* ECF 24-1 at 6-8. And the Department anticipates allocating approximately 106 maximum points for the 2023 cycle, albeit with a different distribution across the various criteria. *See infra* Part III.

Applications are evaluated by independent peer reviewers (*i.e.*, experts and academic specialists who are not employees of the Federal government) designated by the Department, who score them in accordance with the regulatory criteria and the associated point allocations set forth in the applicable NIA. *See* 34 C.F.R. §§ 75.217(b), 662.20(c).

## II.    The Foreign-Language Criterion

As set forth in the DDRA regulations, the "Qualifications of the applicant" evaluation category includes four criteria:

> (1) The overall strength of the applicant's graduate academic record;
>
> (2) The extent to which the applicant's academic record demonstrates strength in area studies relevant to the proposed project;
>
> **(3) The applicant's proficiency in one or more of the languages (other than English and the applicant's native language) of the country or countries of research, and the specific measures to be taken to overcome any anticipated language barriers;** and
>
> (4) The applicant's ability to conduct research in a foreign cultural context, as evidenced by the applicant's references or previous overseas experience, or both."

34 C.F.R. § 662.21(c) (emphasis added). Like all the DDRA criteria, points for each "Qualifications of the applicant" criterion are established each year within the NIA associated with that year's application cycle. In the 2022 competition year, criterion 1 was allocated up to 10 points; criterion 2 was allocated up to 10 points; criterion 3 was allocated up to 15 points; and criterion 4 was allocated up to 5 points. *See* ECF 24-1 at 7-8.

Only the third criterion in this category—the Foreign-Language Criterion—is at issue in this case. The Department added that criterion through a 1998 rulemaking, following notice and comment, and set forth its reasons for including it.[1] The Department explained that it added the criterion of "proficiency in one or more of the languages (other than English and the applicant's

---

[1] Prior to 1998, the DDRA regulations included a criterion that "the applicant possesses adequate foreign language skills to carry out the proposed project," but did not distinguish "English and the applicant's native language" for purposes of the analysis. *See* Pls.' Ex. 1. The 1998 amendments also changed the remaining criteria in various other ways that are not material to the instant motion.

native language) of the country or countries of research" in order to fulfill the purposes of the Fulbright-Hays Act by placing "a greater emphasis on foreign language training." 63 Fed. Reg. 46,358, 46,359 (Aug. 31, 1998). With respect to the carve-out for English and native languages, the Department further noted that the DDRA program was "originally intended to enhance the foreign language competence of individuals trained in American schools," and thus that the criterion was designed "to give greater emphasis to having acquired a foreign language." *Id.*

Although the DDRA regulations do not define the term "native language," the Department has interpreted that aspect of the regulations in its program guidance. The Department has explained that "[t]he term native speaker means a person who has spoken the language in question from earliest childhood and remains fluent in that language." 24-1 (FY 2022 DDRA instructions).[2]

### III.   The 2022 and 2023 DDRA Program Grant Cycles

The Department issued an NIA for the FY 2022 application cycle on February 2, 2022. In the instructions for the 2022 cycle, the Department explained that applicants were eligible for up to 15 points based on the Foreign-Language Criterion, and reminded candidates that native speakers are not eligible for points under that criterion based on the program regulations. *See* ECF

---

[2]By contrast, the FY 2022 DDRA instructions also defined a separate term, "heritage speaker," to mean "a student who is raised in a home where a non-English language is spoken, who speaks or merely understands the heritage language, and who is to some degree bilingual in English and the heritage language, but lacks native level fluency in writing, speaking, and understanding in that language." *Id.* Because Ms. Gonzalez identifies herself as a native speaker, not a "heritage" speaker, First Am. Compl., ECF 24 ("Compl."), Ex. 14, the heritage speaker consideration is not at issue in this motion.

No. 24-1.[3] The 2022 instructions further explained that "the reasoning behind this scoring is that the DDRA program is intended to enhance the foreign language competence of individuals trained in American schools, and the criterion gives greater emphasis to having acquired a foreign language and would encourage students to acquire an additional foreign language." *Id.*

On September 23, 2022, the Department awarded 90 new DDRA fellowships based on the funding appropriated for the FY 2022 application cycle. With an average fellowship award of $37,504, those 90 awards exhausted the full amount of the $3,375,392 that was appropriated for the DDRA program for FY 2022. *See* DDRA Funding Status, Dept. of Ed., *available at* https://www2.ed.gov/programs/iegpsddrap/funding.html.

The FY 2023 application cycle has not begun.  Although the NIA for 2023 has not yet been issued, the Department has announced in advance that only one point will be allocated to the Foreign-Language Criterion in the upcoming competition year (compared with the 15 points this criterion has historically been assigned). *See* DDRA Applicant Information, Dept. of Ed., https://www2.ed.gov/programs/iegpsddrap/applicant.html.  With respect to the remaining application considerations, "points to be awarded to other selection criteria will be announced in the forthcoming Notice Inviting Applications for this competition." *Id.* The Department currently estimates that the total maximum potential score for the 2023 cycle will be approximately 106 points across all the DDRA criteria combined.

---

[3] While the 2022 instructions also initially stated that a "heritage" speaker of a foreign language who proposes to conduct research in that language would only be eligible for up to 10 points on the 15-point scale, *id.*, the Department later determined that it would treat all "heritage" speakers of foreign languages "as eligible for up to the full 15 points on the criterion that evaluates an applicant's language proficiency." ECF No. 18 ¶ 6.

IV.     **Plaintiff Gonzalez's DDRA Candidacy**[4]

Plaintiff Gonzalez is a doctoral candidate at University of California Irvine, who applied for a DDRA fellowship in FY 2022 to conduct research in Mexico. Mot. at 7-8. Plaintiff Gonzalez was born in the United States to parents who emigrated from Mexico. *Id.* at 7. Because she grew up speaking Spanish with her family and first learned English at primary school, Compl. ¶ 25, Plaintiff Gonzalez identified herself as a native Spanish speaker in her FY 2022 DDRA application. Compl. Ex. 14. In accordance with the Foreign-Language Criterion as applied during the FY 2022 cycle, Plaintiff Gonzalez was not eligible for any points under the Foreign-Language Criterion as a "native speaker of the language of the country in which [she] proposed to conduct research." *Id.*

Plaintiff Gonzalez was not ultimately selected for a DDRA fellowship during the 2022 cycle, and she has stated that she intends to reapply in 2023. Mot. at 2.

V.      **Procedural History**

On May 3, 2022, Plaintiffs Ulloa Lujan and Samar Ahmad filed this case, challenging the Foreign-Language Criterion on four grounds: (1) absence of authority under the Fulbright-Hays Act; (2) equal protection as imported by the Due Process Clause; (3) Title VI of the Civil Rights Act; and (4) the arbitrary and capricious clause of the Administrative Procedure Act. *See* Compl.

---

[4]Although there are two other plaintiffs in this case (Samar Ahmad and Ulloa Lujan), Plaintiffs seek preliminary injunctive relief only as to Plaintiff Gonzalez. Indeed, there is no basis to seek similar relief with respect to the other two plaintiffs. First, Plaintiff Ahmad has already been granted a DDRA fellowship. Ms. Ahmad was deemed a "heritage speaker," not a "native speaker," for purposes of her 2022 application and was, thus, eligible for the up to the full 15 points on the Foreign-Language Criterion. *See* Compl. ¶ 80; ECF No. 18 ¶ 6. Plaintiff Lujan applied for a DDRA fellowship during the 2020 and 2021 cycles, but did not apply during the 2022 cycle and has not indicated any intent to apply in 2023. *See* Compl. ¶ 102.

¶¶ 117-152. On November 16, 2022, Plaintiffs filed their First Amended Complaint, which lodged the same claims but added Veronica Gonzalez as an additional Plaintiff. *Id.* ¶¶ 3, 82-98.

On January 3, 2023, Plaintiffs filed the instant Motion for Preliminary Injunction, asking this Court to order two forms of relief for Plaintiff Gonzalez: (1) "requiring Defendants to reevaluate Plaintiff Gonzalez's 2022 application for the DDRA fellowship without applying [the Foreign-Language Criterion]"; and (2) "requiring Defendants to suspend [the Foreign-Language Criterion] for the 2023 application cycle so that Ms. Gonzalez could re-apply without facing the 'native language penalty.'" ECF No. 25 at 1. The motion does not seek preliminary relief with respect to either of the other two Plaintiffs in this case, nor is there any basis to do so. *See supra* note 5.[5] And the motion only raises substantive arguments based on two of the four grounds listed in Plaintiffs' Complaint: (1) absence of statutory authority; and (2) equal protection principles.

In the meantime, while this litigation has been pending, the Department has separately commenced the process of reviewing the regulation at issue in this case (*i.e.*, the Foreign-Language Criterion), and informed Plaintiffs and the Court that it is preparing a notice of proposed rulemaking that will address that regulation. *See* ECF No. 20 ¶ 4. The proposed rulemaking has been listed on the Department's Unified Regulatory Agenda, *see* Dept. of Ed. Agency Rule List

---

[5] On June 22, 2022, Plaintiffs filed a separate motion for preliminary injunction on behalf of Plaintiff Ahmad, ECF No. 14, which was subsequently withdrawn, ECF No. 19. That prior motion—which was filed before Ms. Gonzalez was added to this case—had sought preliminary relief *only* with respect to Plaintiff Ahmad's 2022 DDRA application. Following a stipulation that resolved the concerns raised by that motion, the parties jointly requested withdrawal of the motion, *see* ECF No. 18, which the Court granted, ECF No. 19.

(Fall 2022),[6] and the regulatory process remains ongoing. To date, the Department has prepared a draft notice of proposed rulemaking, which is now under review by the Office of Information and Regulatory Affairs in the Office of Management and Budget. *See* OIRA, Pending EO 12866 Regulatory Review, Fulbright-Hays Doctoral Dissertation Research Abroad Fellowship Program (received Jan. 20, 2023), *available at* https://www.reginfo.gov/public/do/eoDetails?rrid=293064.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy that should only issue if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest." *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). The third and fourth factors merge when the government is the party opposing the motion. *Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (citation omitted); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (requiring a "clear showing").

---

[6]*Available at*
https://www.reginfo.gov/public/do/eAgendaMain?operation=OPERATION_GET_AGENCY_R
ULE_LIST&currentPub=true&agencyCode=&showStage=active&agencyCd=1800&csrf_token
=737DA8331380086C1926655266E205B50F063058E5D68E39800A9A7BBCE2846B9B9E9A
74BB1ACD83980497CC7807E3EA053B.

## ARGUMENT

**I.      Plaintiffs' Claims Seeking 2022 Funds Cannot Succeed Because They Are Moot**

It is black-letter law that "when an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation." *City of Houston*, 24 F.3d at 1424. Because the funds Congress appropriated to be spent on Fulbright-Hays grants for fiscal year 2022 are no longer available, no relief (preliminary or otherwise) is available with respect to the 2022 application cycle and any claims based on that cycle are moot.

To establish Article III standing, a plaintiff must show "some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). Consequently, "[f]ederal courts lack jurisdiction to decide moot cases" where relief cannot be afforded. *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008). "It is an elementary principle of the federal budget process that, in general, a federal agency's budget authority lapses on the last day of the period for which funds were obligated." *W. Va. Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984). The Fulbright-Hays programs (including the DDRA Program) are no different. As explicitly stated in the relevant appropriations act: "[n]o part of any appropriation contained in this Act shall remain available for oblbigation beyond the current fiscal year." Consolidated Appropriations Act of 2022, Pub. L. No. 117-103, 136 Stat. 495, § 502. Although a court has equitable authority to issue preliminary or permanent injunctive relief to stay a funding lapse or otherwise prevent the agency from disbursing the funds, filing suit by itself is not sufficient. "[T]o avoid having its case mooted, a plaintiff must both file its suit before the relevant appropriation lapses *and* seek a preliminary injunction preventing the agency from disbursing those funds." *City of Houston*, 24 F.3d at 1426.

*City of Houston* illustrates these principles. In that case, the U.S. Department of Housing and Urban Development ("HUD") reduced Houston's fiscal year 1986 Community Development Block Grant ("CDBG") after it determined that Houston had violated HUD's rules regarding timely expenditure of funds. *Id.* at 1424-25. HUD proceeded to reallocate the money that would have gone to Houston. *Id.* at 1425. The appropriation authorizing HUD to disburse the funds at issue expired on September 30, 1988. *Id.* Months after this expiration date, Houston challenged the reduction in the grant in federal court. *Id.* The D.C. Circuit held that Houston's suit was moot for two reasons. First, HUD had obligated all of the CDBG funds before September 30, 1988. *Id.* at 1427. Second, the appropriation had lapsed on September 30, 1988. *Id.* Because "Houston did not seek a stay of the appropriation's expiration prior to that date," it no longer had a remedy to pursue. *Id.* at 1427.

Following *City of Houston*, at least one other court has dismissed APA claims on mootness grounds when appropriated funds are unavailable, regardless of whether suit was filed before or after the agency's congressional authorization to obligate the funds had expired. In *County of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010), the plaintiffs filed suit during the 2007 fiscal year to challenge their classification under the Ryan White Act, which lowered their statutory entitlement to funding. *Id.* at 138-39. After failing to obtain a preliminary injunction from the district court or an injunction pending appeal, the plaintiffs succeeded in their interlocutory appeal on the grounds that they had established a reasonable likelihood of success on the merits. *Id.* at 139. On remand, the government asserted that claims relating to the 2007 and 2008 fiscal years were moot "because HHS had distributed the funds that were appropriated by Congress for those fiscal years" to other qualified entities. *Id.* The Second Circuit, applying *City of Houston*, agreed the claims "became moot . . . during the course of this litigation" because even though the D.C.

13

Circuit "indicated that a plaintiff must 'seek a preliminary injunction,'" its analysis "applies with equal force where a plaintiff attempts, but ultimately fails, to enjoin an agency's expenditures." *Id.* at 139-42 (quoting *City of Houston*, 24 F.3d at 1427).

Applying *City of Houston* here, Plaintiffs' claim seeking reevaluation of Plaintiff Gonzalez's 2022 application unquestionably are moot. The funds for the 2022 application cycle have been fully disbursed, and the appropriation for that cycle has expired. 136 Stat. 495, § 502. This lawsuit was filed in May 2022, but Plaintiff Gonzalez did not seek, much less obtain, a preliminary injunction to prevent the agency from disbursing the FY 2022 funds. Accordingly, the Court does not have jurisdiction over Plaintiffs' claim seeking reevaluation of her application for the 2022 DDRA cycle, and those claims must be dismissed.

Moreover, Plaintiff Gonzalez's claim for FY 2022 funds could not be revived even if she were to identify other funding sources that might serve as a substitute for the funds that she asserts she was entitled to receive. This is because "[a]n award of monetary relief from any source of funds other than the [2022 program cycle] appropriation would constitute money damages rather than specific relief, and so would not be authorized by APA section 702." *City of Houston*, 24 F.3d at 1428. The APA does not permit suits for "money damages," 5 U.S.C. § 702, so monetary awards are only permissible when "such an award constitutes *specific relief*—that is, when a court orders a defendant to pay a sum owed out of a specific *res*." *Id*. In *City of Houston*, Houston identified "$12 million that HUD allegedly has recouped from other grantees" which Houston alleged were "not reserved for use in any particular year or for particular projects." *Id.* Nonetheless, the D.C. Circuit held that Houston's claims were moot. *Id.*

Other courts applying *City of Houston* have also held that the APA does not allow courts to make up for a lapse in appropriations by looking to other funds. *See Modvoc Lassen Indian*

14

*Housing Auth. v. U.S. Dep't of Housing & Urban Dev.*, 881 F.3d 1181, 1195-99 (10th Cir. 2017) (reversing district court's order that HUD compensate plaintiff for monies unlawfully withheld ten years prior to filing suit "from all available sources," including carryover funds and funds appropriated in future grant years, as an impermissible award of "money damages" under the APA, and ordering "remand for factual findings regarding whether any of the recaptured funds remained in HUD's possession when the district court ordered it to repay the tribes"); *County of Suffolk*, 605 F.3d at 142-43 (rejecting argument that "notwithstanding HHS's exhaustion of the appropriations at issue, their claims are not moot because they could collect on a judgment from the appropriation in the Judgment Fund.").

Accordingly, Plaintiffs' claims seeking 2022 funds are moot. Those claims cannot provide a basis for relief and should be dismissed for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## II.     All of Plaintiffs' Claims are Unlikely to Succeed on the Merits

Putting aside the jurisdictional problems with Plaintiffs' claims based on the 2022 cycle, all of Plaintiffs' claims are also unlikely to succeed on the merits. Plaintiffs argue that the Foreign-Language Criterion exceeds the Department's statutory authority and violates equal protection principles. Those claims are unsupported by the record and fail as a matter of law.

### A. The Challenged Regulation is Consistent with the Department's Authority to Implement the Fulbright-Hays Act.

Under the Fulbright-Hays Act, the Department has been delegated authority to administer the DDRA program, including by setting criteria for evaluating fellowship applications. 34 C.F.R. § 662.21. Based on the program's purpose of promoting foreign language training, 63 Fed. Reg. at 46,359, the Department included the Foreign-Language Criterion, which states that the Secretary

15

will consider: "[t]he applicant's proficiency in one or more of the languages (other than English and the applicant's native language) of the country or countries of research[.]" 34 C.F.R. § 662.21(c)(3). Plaintiffs do not dispute the Department's authority to set DDRA application criteria generally, nor can they dispute that the Department is charged with implementing the program in a manner that "promotes modern foreign language training . . . in United States schools." 22 U.S.C. § 2452(b)(6). Rather, Plaintiffs take issue only with how the Department interprets the phrase "foreign language training" and, specifically, whether the Department's interpretation of that phrase—as implemented in the Foreign-Language Criterion—is consistent with its meaning in the underlying statute. Mot. at 19. The Department's interpretation of the Fulbright-Hays Act is consistent with the statute, reasonable, and entitled to deference.

In reviewing an agency's interpretation of a statute, the Court must apply the standard set forth in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, the agency's construction of a statute that it administers is entitled to deference unless the text "unambiguously forbids" that interpretation or the interpretation "exceeds the bounds of the permissible" for some other reason. *Barnhart v. Walton*, 535 U.S. 212, 218 (2002). "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. To meet this deferential test, the agency's reading need not be the "only permissible" one, *Chem. Mfrs. Ass'n v. Nat. Res. Def. Council*, 470 U.S. 116, 125 (1985), or even "the best or most natural one by grammatical or other standards." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991). Rather, the agency's construction need only fall "within the bounds of reasonable interpretation." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 453 (1999). The Foreign-Language Criterion meets this deferential standard.

16

When interpreting a statute, a court must start with the specific statutory language at issue. *Easom v. US Well Servs., Inc.*, 37 F.4th 238 (5th Cir. 2022). Here, Section 2452(b)(6) charges the Department with "promot[ing]" "foreign language training" through the Fulbright-Hays program. Because the statute does not define those terms, they must be interpreted in accordance with "their ordinary, contemporary, common meaning." *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). To make that determination, the Court may look to the terms' dictionary definitions, as well as the terms' statutory context and purpose, in deciding whether the agency's interpretation is permissible. *Id.* Applying those tools of statutory construction, it is clear that the Foreign-Language Criterion is consistent with the underlying statute.

First, the term "foreign language" is ambiguous at best, and the Department's construction is reasonable.[7] Contrary to Plaintiffs' argument, the term "foreign language," does not mean only "a language that is not indigenous to the country in question." Mot. at 20. While an assessment of whether a language is "foreign" *may* in some circumstances be "answered by referencing a specific country," *id.*, it also may be defined to mean "of, from, in, or characteristic of a country *or language other than one's own*." "Foreign," the Oxford Pocket Dictionary of Current English (Oxford Univ. Press) (emphasis added), *available at* https://www.encyclopedia.com/social-sciences-and-law/law/law/foreign. In other words, how one interprets the phrase "foreign language" depends on the context at hand. Faced with that ambiguity, the Department adopted the interpretation that it reasonably determined would address the DDRA program's goal of using

---

[7] Because the underlying statute here is ambiguous with respect to the specific issue at hand, the Court can move directly to step two of the *Chevron* test to decide whether the Department's interpretation is reasonable.

grant funds to support research performed by *individual* candidates who have acquired a *language other than their own*.[8]

Second, the reasonableness of the Department's interpretation is confirmed when the term "foreign language" is read in context. The purpose of the statute is to "*promot[e]* modern foreign language *training* and area studies *in United States schools, colleges and universities.*" 22 U.S.C. § 2452(b)(6) (emphasis added). The word "promote" can mean "to bring or help bring into being," as well as to "contribute to the growth, enlargement, or prosperity of," or to "encourage or 'further." *U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty.*, 712 F.3d 761, 768 (2d Cir. 2013) (citation omitted). The word "train" means "to teach as to make fit, qualified, or proficient," while "training" means "the skill, knowledge, or experience *acquired* by one that trains." "Train" & "Training," Merriam-Webster Dictionary (online ed.) (emphasis added), *available at* https://www.merriam-webster.com/dictionary/training. Putting these two definitions together, the phrase "promoting modern foreign language training . . . in United States schools, colleges, and universities" can reasonably be understood to mean helping to bring into being the acquisition of foreign language skills—*i.e.,* the acquisition of non-native language skills—through American schools.

---

[8] Plaintiffs attempt to combat this reasonable construction of the Fulbright-Hays Act by pointing to an interpretation relating to foreign language that was adopted for a separate program administered by the Department of Defense (the Boren Fellowship). *See* Mot. at 21. But the Department of Defense interprets a *different* statute that has a distinct context and purpose. *See* 50 U.S.C. § 1902(a)(1). By contrast, other interpretations of the *same* language from the Fulbright-Hays Act are consistent with the DDRA regulations. For example, the Fulbright-Hays Faculty Research Abroad ("FRA") program was also created under the authority of 2452(b)(6) and pursues similar goals. Toward that end, the Department's criteria for evaluating applications under the FRA program similarly provide for an evaluation of an applicant's language proficiency in a language other than English and the applicant's native language. *See* 34 C.F.R. § 663.21(c)(3).

Contrary to Plaintiff's assertions, this interpretation is not "based on a mistaken belief that individuals cannot be trained in U.S. schools in their native language." Mot. at 22-23. Of course, people can receive education in their native language from U.S. schools—and nothing in the regulation suggests otherwise. Rather, the Department's interpretation is based on the fact that advancing one's skills in a language that they already know is not the same as acquiring a language that is "foreign" to them. Similarly, for example, if a person grew up with English as their native language, they too may need additional English language training through school in order to strengthen those skills or to learn discipline-specific usage. That additional schooling may be useful in *any* language does not render a person's native language foreign to them.

Finally, the Department's interpretation is reasonable when viewed in light of its authority and expertise administering the DDRA program. The Department has been administering the DDRA program for sixty years and, thus, is in the best position to decide which policies serve its purposes. Recognizing that funding for the program is limited, the Department concluded that those scarce resources are best directed to promoting acquisition of language skills most likely to be acquired through American educational institutions. Under the deferential standard that applies here, it is the Department's prerogative to draw reasonable lines in order to decide which applications best fulfill the purposes of the program.

**B. Plaintiffs' Equal Protection Claims are Unlikely to Succeed on the Merits.**

Plaintiffs contend that the Foreign Language Criterion violates equal protection principles because it discriminates on the basis of national origin. On the contrary, the regulation sets review standards that take into account the source of an applicant's *language* acquisition—not their national origin. In arguing that the challenged regulation is discriminatory on its face because language is an automatic proxy for national origin, Mot. at 13-14, Plaintiffs ignore Fifth Circuit

caselaw holding otherwise—specifically, that language and national origin are not, in and of themselves, the same thing. *Garcia*, 618 F.2d at 268-71.

When a suspect classification—*e.g.,* national origin—does not appear on the face of the statute, the Court must "conduct a more searching inquiry into the intent of the lawmakers. Strict scrutiny will be applied only if the plaintiff can demonstrate that the government acted with a discriminatory motive." *Lewis v. Ascension Par. School Bd.*, 662 F.3d 343, 359-60 (5th Cir. 2011); *see also Vasquez v. McAllen Bag & Supply Co.*, 660 F.2d 686, 688 (5th Cir. 1981) (holding that a finding of purpose or intent to discriminate against Mexican-Americans was "a prerequisite for recovery" in challenge to English-speaking language requirement)*.* Otherwise, "[i]f the government did not act with such a purpose, [the Court] review[s] its decision for a rational basis." *Id.* (citing *See Grutter v. Bollinger,* 539 U.S. 306, 326–27 (2003)).

Because the Department's decision was motivated by the non-discriminatory goals of encouraging the acquisition of new language training in American schools and highlighting successes of the American educational system in training students to acquire new languages—and because the Foreign-Language Criterion is rationally related to that purpose—Plaintiffs' equal protection claims are unlikely to succeed on the merits.

1. Plaintiffs Have Not Shown that the Department had a Discriminatory Motive for issuing the Foreign-Language Criterion

Where, as here, the challenged regulation is facially neutral as to national origin, Plaintiffs bear the burden to show that discrimination based on national origin was a motivating factor behind the law. *See Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016). The Fifth Circuit has laid out factors for courts to consider when determining whether a decision was made with a discriminatory purpose, including: "(1) the historical background of the decision, (2) the specific sequence of

events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Id.* (quoting *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989) (citing *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 267-68 (1977)). Plaintiffs do not even acknowledge this test, much less meet their burden to satisfy it. And review of these factors confirms that the Department did not promulgate the Foreign-Language Criterion for the purpose of discriminating based on national origin.

First, neither the historical background nor the specific sequence of events leading up the promulgation of the Foreign-Language Criterion provides any indication of discriminatory purpose. Plaintiffs point to no history, either surrounding the 1998 regulations or over a broader period of time, that creates the inference that the Department sought to discriminate on the basis of national origin. On the contrary, the Department has consistently made it a high priority to combat all forms of discrimination, including national origin discrimination. See 34 C.F.R. §§ 100.1, 100.3(a).

Second, Plaintiffs do not attempt to identify any procedural or substantive departure from normal practices when the Department promulgated the Foreign-Language Criterion, let alone a departure that would support an inference of discrimination. Indeed, there were no such departures in the course of the 1998 rulemaking. The challenged regulation was initiated by a notice of proposed rulemaking, followed by a comment period. *See* 63 Fed. Reg. 46,358. The Department considered and addressed comments on the proposed rule, *id.* at 46,360, and then issued a final rule that explained its reasons for the decisions made. *Id.*

Third, the regulatory history of the Foreign-Language Criterion demonstrates that it was promulgated for nondiscriminatory purposes. The history of the DDRA program shows that one

of its key purposes is to "promot[e] modern foreign language training" in United States schools. 22 U.S.C. § 2452(b)(6). To further that purpose, the Department revised the criteria for the DDRA evaluation process to require that "the applicant be proficient in one or more of the languages of the country or countries of research, excluding English and the applicant's native language." 63 Fed. Reg. at 46,359. The Department explained that its reason for adding this criterion was to "give greater emphasis to having acquired a foreign language" through American schools. *Id*. And consistent with that goal, the Department aimed to decrease the number of applications from individuals wishing to conduct research in English, since the Department had received a substantial increase in such applications, and to "encourage," for example, "non-native born United States citizens or resident aliens to acquire an additional foreign language." *Id.*

In response to a commentor, the Department also separately explained that the carve-out for native language from the Foreign-Language Criterion was a sensible mechanism for achieving the program goals—because including applicants' native language when assessing foreign language proficiency would make it more difficult for the Department to prioritize language acquisition in American schools when issuing awards. 63 Fed. Reg. at 46,360. And, because the program's purpose is to prioritize acquisition of foreign language in American schools, the Department concluded that "research in [an applicant's] native language should not enjoy the advantage in the competition that the prior regulations provid[ed]." *Id.* Contrary to Plaintiffs' assertions, this explanation did not indicate a motivation to disadvantage "non-native born" students. Mot. at 16, 18. Rather, when discussing its concerns about "advantage in the competition" the Department was referring to treatment of language skills that were not acquired in U.S. schools, not the treatment of applicants themselves based on their place of birth.

This is not the equivalent of national origin discrimination. Nothing in the Department's explanation suggests it promulgated the Foreign-Language Criterion "with the express aim of 'encouraging' [non-native applicants] not to apply" for grants, as Plaintiffs contend. Mot. at 14. Rather, the Department made clear that its goal was to encourage such applicants to acquire an additional language—in the same way that its rule also encourages native English speakers to acquire new languages.[9] Indeed, that is the reason why the regulation itself refers to "native language"—not national origin—and that is how the regulation operates in practice. For example, a person of Mexican origin who is not a native speaker of Spanish, but rather acquires proficiency in Spanish through American educational institutions (imagine, for example a person who was born in Mexico who immigrated to the United States at a very young age) would be eligible for the full point allocation if they applied to conduct research in a Spanish-speaking country. Alternatively, a native Spanish speaker (regardless of their national origin) would be eligible for the full point allocation for language proficiency if they were applying to conduct research in a country that speaks any language other than Spanish or English. In either case, the reason is because that person would present an example of the skills that the Fulbright-Hays Program (and

_____

[9] Plaintiffs make much of the fact that the preamble provides as an example of the regulation's benefits "encouraging non-native born United States Citizens or resident aliens to acquire an additional foreign language" even though the regulation also impacts persons who "acquired a foreign language through their national heritage despite being native born."  Mot. at 14. Notwithstanding Plaintiffs' assertion, this limited discussion from the preamble does not mean that the Department "perceives" native speakers of foreign languages "to be non-native born—even if they are in fact born in the United States." *Id.* Nor has the Department ever taken that position or had that purpose. On the contrary, the Department instituted a language requirement only, which does not differentiate based on an applicant's place of birth.

by extension the DDRA fellowship) aims to highlight – the success of the American educational system in promoting the acquisition of foreign language skills.[10]

 2.  The Department Rationally Determined that the Foreign-Language Criterion Advances the Purpose of the Fulbright-Hays Program

Because the Foreign-Language Criterion is facially neutral as to national origin, and because the Department did not act with discriminatory intent or purpose, Plaintiffs' challenge is subject only to rational basis review. *Lewis v. Ascension Par. School Bd.*, 662 F.3d 343, 359-60 (5th Cir. 2011). "Rational-basis review is guided by the principle that [courts] do not have 'a license . . . to judge the wisdom, fairness, or logic of legislative choices.'" *Hines v. Quillivan*, 982 F.3d 266, 273 (5th Cir. 2020) (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319 (1993)). So long as the challenged policy is rationally related to a legitimate government objective, it survives rational basis scrutiny. *Id.*

In this case, the Department articulated a rational reason as to why its regulation draws a distinction on the basis of proficiency in an applicant's non-native language. As discussed above, the purpose of the program is to encourage language training in American schools, and to highlight success of the American educational system in training students to acquire new languages. The Foreign-Language Criterion furthers this purpose by encouraging potential applicants to acquire a new language and by prioritizing foreign language skills that are more likely to have been acquired in American schools.

---

[10] These examples highlight why Plaintiffs' reliance on *Gratz* and its progeny is misplaced. Mot. at 12-13, 16 (citing *Gratz v. Bollinger*, 539 U.S. 244, 274 (2003)). Unlike situations in which a school "makes race a decisive factor for virtually every minimally qualified underrepresented minority applicant," *Gratz*, 539 U.S. at 274, here individuals of all national origins are eligible for the full point allocation under the Foreign Language Criterion, whenever they seek to conduct research in a country that does not speak English or their native language.

Plaintiffs cannot dispute that the regulation furthers this purpose on balance. Instead, they argue that it should be enjoined because it is underinclusive—*i.e.,* because some non-native foreign language speakers may acquire foreign language skills outside U.S. schools, but nonetheless remain eligible for the full point allocation under the regulation. That argument misunderstands rational basis review. "A classification may be underinclusive or overinclusive and yet survive rational-basis review." *Hines*, 982 F.3d at 274 (citing *Harris v. Hahn*, 827 F.3d 359, 369 (5th Cir. 2016)). This is because "the Constitution does not require perfect policies" to achieve a legitimate government interest. *Id.*  Rather, when the government "has a choice of means, each rationally related to its legislative purpose, it may constitutionally choose any of them. Its choice of one does not render the others irrational." *Id.* (quoting *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir. 1985)). In other words, the question is not whether the Department could have adopted a different approach, but whether the approach it chose rationally furthers a legitimate purpose. The Foreign-Language Criterion meets that deferential standard.

### C. The Balance of Harms and Public Interest do not Support a Preliminary Injunction

The harm to the public interest that would result from a preliminary injunction here would outweigh any alleged injury to Plaintiff Gonzalez under the circumstances.

First, a preliminary injunction would undermine the regulatory process that is already underway to assess the Foreign-Language Criterion. As described above, the Department has begun new rulemaking proceedings in relation to the regulation at issue in this case. *See* ECF No. 20 ¶ 4. The proposed rulemaking has been listed on the Department's Unified Regulatory Agenda,

*see* Dept. of Ed. Agency Rule List (Fall 2022),[11] and is now under review by the Office of Information and Regulatory Affairs in the Office of Management and Budget, *see* OIRA, Pending EO 12866 Regulatory Review.[12] Once a notice of proposed rulemaking is published, all interested persons will have a period of time to submit written comments regarding the proposed rule, which the Department will then assess and take into account before issuing a final rule. There are good reasons for that process; the purpose of notice-and-comment rulemaking is "(1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Miami-Dade Cty. v. E.P.A.*, 529 F.3d 1049, 1058 (11th Cir. 2008) (quoting *Envtl. Integrity Project v. E.P.A.*, 425 F.3d 992, 996 (D.C. Cir. 2005)). Imposing a preliminary injunction of the rule before that process is completed would inject confusion into the agency's decisionmaking. It would cast unnecessary doubt over the Department's ultimate determination, notwithstanding the agency's decades of expertise administering the DDRA program—which is entitled to deference. Those concerns are particularly salient here, where the Department has consistently articulated a reasonable basis for the existing rule that is grounded in the purposes of the program and the underlying statute. *See supra* Part II.

---

[11]*available at*
https://www.reginfo.gov/public/do/eAgendaMain?operation=OPERATION_GET_AGENCY_R
ULE_LIST&currentPub=true&agencyCode=&showStage=active&agencyCd=1800&csrf_token
=737DA8331380086C1926655266E205B50F063058E5D68E39800A9A7BBCE2846B9B9E9A
74BB1ACD83980497CC7807E3EA053B.

[12] *available at* https://www.reginfo.gov/public/do/eoDetails?rrid=293064.

By contrast, any harm to Plaintiff Gonzalez absent a preliminary injunction would be minimal at best. Plaintiffs cannot obtain relief based on the FY 2022 application cycle because those funds are unavailable. *See supra* Part I. And, as to the FY 2023 cycle, the Department has committed to allocating only one point to the Foreign-Language Criterion for the upcoming application evaluation process. *See* DDRA Applicant Information, Dept. of Ed., *available at* https://www2.ed.gov/programs/iegpsddrap/applicant.html. Thus, regardless of whether the Foreign-Language Criterion may or may not be altered at some point (and regardless of whether any revised rule is final in time for 2023 fellowship awards to issue),[13] Plaintiff only stands to lose 1 point out of a potential 106 points total as a result of that criterion in 2023. This provides ample opportunity for Ms. Gonzalez to be a competitive candidate for the program in 2023. Compl. ¶ 96.

## CONCLUSION

Accordingly, for the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

---

[13] Candidate selection and allocation of 2023 funds are still many months away. The NIA for the 2023 cycle is expected to be published within the next month. After that, the program's application and review process will take approximately seven months from initiation before candidates are selected and funds are ultimately allocated.

Dated: January 24, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

/s/ Emily B. Nestler
EMILY B. NESTLER (NY Bar # 4398095)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-0167
Fax: (202) 616-8470
E-mail: emily.b.nestler@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 24th day of January, 2023, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

*/s/ Emily B. Nestler*
Emily B. Nestler