IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

El Paso Division

| | |
|---|---|
| EDGAR ULLOA LUJAN; <br><br> SAMAR AHMAD; <br><br> VERONICA GONZALEZ; <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION; <br><br> MIGUEL CARDONA, Secretary, U.S. Department of Education, in his official capacity; <br><br> MICHELLE ASHA COOPER, Assistant Secretary for Postsecondary Education, U.S. Department of Education, in her official capacity, <br><br> Defendants. | CIVIL CASE NO. 3:22-CV-00159-DCG |

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

    I.    Ms. Gonzalez Is Likely to Succeed on the Merits ........................................................ 2

        A.    Defendants' Preposterous Interpretation of 'Foreign Language' Is Not Entitled to Deference ................................................................................................................. 2

        B.    Disparate Treatment Based on Native Language Is National Origin Discrimination ................................................................................................................. 5

    II.    Ms. Gonzalez Is Entitled to Injunctive Relief ................................................................ 6

        A.    Disbursement of 2022 Funds Does Not Affect Ms. Gonzalez's Entitlement to a Doctoral Fellowship ........................................................................................................ 6

        B.    Neither Rulemaking nor the Unlawful Devaluation Scheme Tilts the Balance of Harms in Defendants' Favor ............................................................................................ 8

CONCLUSION ............................................................................................................................... 10

CERTIFICATE OF SERVICE ....................................................................................................... 11

## TABLE OF AUTHORITIES

Pages(s)

**CASES**

*Am.'s Cmty. Bankers v. FDIC.*,
 200 F.3d 822 (D.C. Cir. 2000)................................................................................................7

*Anderson v. Jackson*,
 556 F.3d 351 (5th Cir. 2009) ...................................................................................................8

*Asian Am. Bus. Grp. v. City of Pomona*,
 716 F. Supp. 1328 (C.D. Cal. 1989) .................................................................................. 5, 6

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988) ............................................................................................................ 6, 8

*BST Holdings, LLC. v. OSHA*,
 17 F.4th 604 (5th Cir. 2021) ...................................................................................................9

*Buffington v. McDonough*,
 143 S. Ct. 14 (2022) .................................................................................................................3

*Cargill v. Garland*,
 57 F.4th 447 (5th Cir. 2023) (en banc)..................................................................................3

*Carino v. Univ. of Okla. Bd. of Regents*,
 750 F.2d 815 (10th Cir.1984) .................................................................................................5

*Cartagena v. Aegis Mortg. Corp.*,
 275 F.3d 46 (5th Cir. 2001) ....................................................................................................5

*Chamber of Com. v. DOL*,
 885 F.3d 360 (5th Cir. 2018) .............................................................................................. 3, 4

*Chevron, U.S.A., Inc. v. NRDC*,
 467 U.S. 837 (1984) .................................................................................................................3

*City of Houston v. HUD*,
 24 F.3d 1421 (D.C. Cir. 1994).............................................................................................7, 8

*Cnty. of Suffolk v. Sebelius*,
 605 F.3d 135 (2d Cir. 2010)....................................................................................................7

*Garcia v. Gloor*,
 618 F.2d 264 (5th Cir. 1980) ..................................................................................................5

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*,
 968 F.3d 454 (5th Cir. 2020) ..................................................................................................3

*In re Rodriguez*,
 487 F.3d 1001 (6th Cir. 2007) ............................................................................................ 5, 8

*Kisor v. Wilkie*,
 139 S. Ct. 2400 (2019).............................................................................................................4

*Kornman & Assocs., Inc. v. United States*,
    527 F.3d 443 (5th Cir. 2008) ..................................................................................................3

*Michigan v. EPA*,
    576 U.S. 743 (2015) ................................................................................................................3

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*,
    508 U.S. 656 (1993) ................................................................................................................9

*Phillips Petroleum Co. v. Johnson*,
    No. 93-1377, 1994 WL 484506 (5th Cir. Sept. 7, 1994) ........................................................8

*Rodriguez v. Carson*,
    401 F. Supp. 3d 465 (S.D.N.Y. 2019) ....................................................................................7

*Texas v. United States*,
    497 F.3d 491 (5th Cir. 2007) ..................................................................................................3

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ................................................................................................................3

**STATUTES**

22 U.S.C. § 2452 ...............................................................................................................1, 2, 4, 10

5 U.S.C. § 702 .................................................................................................................................6

Consolidated Appropriations Act of 2023,
    Pub. L. No. 117-328 (2022), 136 Stat. 4459 ..........................................................................6

**OTHER AUTHORITIES**

*DDRA Applicant Information*, Dep't of Educ. (Jan. 10, 2023), available at
    https://www2.ed.gov/programs/iegpsddrap/applicant.html (last visited Feb. 7, 2023) ..................1

H.R. Rep. No. 87-1094 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2759 .....................................4

**REGULATIONS**

34 C.F.R. § 662.1............................................................................................................................ 1, 9

34 C.F.R. § 662.3........................................................................................................................ 1, 9, 10

34 C.F.R. § 663.21..........................................................................................................................4

**PRELIMINARY STATEMENT**

In response to Ms. Gonzalez's request for Defendants to fairly evaluate her language proficiency, Defendants made the foreign-language criterion virtually worthless in the upcoming competition by reducing its point value from 15 to 1. *See* Def. Br. at 3. This devaluation of language skills eviscerates the very purpose of the Doctoral Fellowship to "conduct dissertation research abroad *in modern foreign languages*." 34 C.F.R. § 662.1(b) (emphasis added). It also violates the Fulbright-Hays Act's instruction to "promot[e] modern foreign language training," 22 U.S.C. § 2452(b)(6), and creates an irreconcilable conflict with Defendants' own regulation requiring awardees to "[p]ossess[] sufficient foreign language skills" for doctoral research, 34 C.F.R. § 662.3.

It is difficult to understand Defendants' rationale,[1] except perhaps to continue devaluing Ms. Gonzalez's advanced language skills even after this Court orders her to be eligible for full points under the foreign-language criterion. More charitably, Defendants recognize the foreign-language criterion's native-language penalty is unlawful and are attempting to reduce its size based on a misguided belief that the Constitution tolerates invidious discrimination in small doses. Whatever Defendants' reasons, the devaluation of the foreign-language criterion heaps new irreparable injuries upon Ms. Gonzalez and other 2023 applicants with advanced language skills by unlawfully and irrationally wiping out the advantage to which the statute entitles them against less-skilled linguists. If anything, this last-minute change should be enjoined alongside the native-language penalty.

Nothing in Defendants' brief alters the conclusion that native-language discrimination under the foreign-language criterion violates both the Fulbright-Hays Act and the Due Process Clause. Defendants' interprets "foreign language training," which 22 U.S.C. § 2452(b)(6) requires them to

---

[1] Defendants' website states "the Department of Education intends to assign one point to selection criterion 34 C.F.R. § 662.21(c)(3)" with no further explanation. *DDRA Applicant Information*, Dep't of Educ. (Jan. 10, 2023), available at https://www2.ed.gov/programs/iegpsddrap/applicant.html (last visited Feb. 7, 2023), cited Def. Br. at 27. Their brief likewise contains no explanation.

1

promote, to mean training in a language that is foreign *to the applicant*, as opposed to foreign to the United States. The disfavored *Chevron* doctrine does not salvage Defendants' preposterous reading because: (i) Defendants lack statutory authority to issue legally binding rules; and (ii) traditional tools of statutory construction confirm § 2452(b)(6) requires a country-based definition of foreign language. Equally meritless is Defendants' argument that disparate treatment based on one's immutable native language is not subject to strict scrutiny. Precedent and common sense concur in recognizing that native language is inextricably linked to national origin. The foreign-language criterion thus discriminates based on national origin and is subject to strict scrutiny, which it fails.

Ms. Gonzalez is entitled to an injunction awarding her the Doctoral Fellowship, otherwise she will miss UC Irvine's dissertation deadline and jeopardize her good academic standing. *See* Mot. at 9-10. The expiration of 2022 funding does not matter because Congress specifically appropriated 2023 funds to pay for her research abroad. Ms. Gonzalez is alternatively entitled to an injunction prohibiting Defendants from considering her (or anyone else's) native language when evaluating foreign-language proficiency for the upcoming application cycle. Defendants' rulemaking efforts do not obviate injunctive relief, especially since it is undisputed that no rule will be finalized in time for the 2023 award cycle. Nor does it matter that Defendants reduced the point value of the language criterion. Even a one-point penalty inflicts irreparable injury justifying injunctive relief because *almost* equal protection under the law still does not satisfy the Constitution.

## ARGUMENT

### I. Ms. Gonzalez Is Likely to Succeed on the Merits

#### A. Defendants' Incredible Interpretation of 'Foreign Language' Is Not Entitled to Deference

The native-language penalty is rooted in Defendants' interpretation of "foreign language" under 22 U.S.C. § 2452(b)(6) to mean a language that is foreign to each individual applicant—*i.e.*, only

non-native languages—as opposed to foreign to the United States. *See* Def. Br. at 17-18. The Court should reject Defendants' request for deference under *Chevron USA v. NRDC*, 467 U.S. 837 (1984), cited at Def. Br. at 16, to prop up this plainly unreasonable interpretation.

*Chevron* deference "wrests from Courts the ultimate interpretive authority to 'say what the law is,' and hands it over to the Executive." *Michigan v. EPA*, 576 U.S. 743, 761 (2015) (Thomas, J., dissenting) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)). It further "introduce[s] into judicial proceedings a 'systematic bias toward one of the parties' …, the "federal government, and against everyone else." *Buffington v. McDonough*, 143 S. Ct. 14, 19 (2022) (Gorsuch, J., dissenting from denial of cert.) (quoting Philip Hamburger, Chevron *Bias*, 84 Geo. Wash. L. Rev. 1187, 1212 (2016)). While not yet formally overturned, "*Chevron* has more or less fallen into desuetude" in the Supreme Court. *Id.* at 22. The Fifth Circuit likewise recognizes that "the *Chevron* doctrine has been questioned on substantial grounds," *Chamber of Com. v. DOL*, 885 F.3d 360, 379 n.14 (5th Cir. 2018) (collecting authorities), and thus avoids applying it where possible, *see Cargill v. Garland*, 57 F.4th 447, 465-70 (5th Cir. 2023) (*en banc*). There are ample reasons for the Court to reject *Chevron* deference here.

*Chevron* may be invoked only where an agency satisfies the *Mead* test: "Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 454 (5th Cir. 2008) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)). Defendants concede they are merely "charged with implementing the program," Def. Br. at 16, which falls short of *Mead*'s first requirement for a statute to "grant [the agency] a general power to make rules." *Texas v. United States*, 497 F.3d 491, 509 (5th Cir. 2007) (cleaned up).

Additionally, the Court may not defer to an agency's interpretation before "'exhaust[ing] all the traditional tools of construction,' including 'text, structure, history, and purpose'" to find a genuine ambiguity. *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 460 (5th Cir. 2020) (quoting

*Kisor v. Wilkie*, 139 S. Ct. 2400, 2404 (2019)). Starting with text, 22 U.S.C. § 2452(b)(6) authorizes support for "study in foreign countries" by awardees to "improv[e] their skill in languages … of the people of those countries." This language makes clear that "foreign language" refers to the language spoken by people of the foreign country where the awardee will study. The Act's stated purpose "to increase mutual understanding between the *people of the United States and the people of other countries* by means of educational and cultural exchange" reinforces this country-based understanding of foreign language. *Id.* § 2451 (emphasis added). The Act's legislative history further shows Congress intended § 2452(b)(6) to "focus upon language training and specialized studies of *areas or countries* [by] Americans who teach such subjects." H.R. Rep. No. 87-1094 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 2759, 2765. Text, history, and purpose are in accord that "foreign language" in § 2452(b)(6) unambiguously means a language spoken in a foreign country and not America, *i.e.*, a non-English modern language. Since "uncertainty does not exist, there is no plausible reason for deference." *Kisor*, 139 S. Ct. at 2415.

Elsewhere Defendants themselves do not adopt the preposterous interpretation of "foreign language" in § 2452(b)(6) to mean "*a language other than [the individual's] own*" that they advance here. Def. Br. at 18. If they did, Ms. Gonzalez could satisfy the Doctoral Fellowship's foreign-language criterion with English, which is foreign to her. Yet, that criterion requires proficiency in a language "other than English." 34 C.F.R. § 663.21(c)(3) for an obvious reason: the Doctoral Fellowship must promote mutual exchange between the United States, where English is spoken, and foreign countries, where other languages predominate. Promoting training in English would not serve that purpose, even if English is foreign to the applicant. Deference is thus improper because Defendants' interpretation "fails to pass the test[] of reasonableness." *Chamber of Com.*, 885 F.3d at 380.

Because neither *Chevron* nor any other deference doctrine can rescue Defendants' meritless interpretation of "foreign language," Ms. Gonzalez is likely to succeed on her statutory claim.

### B. Disparate Treatment Based on Native Language Is Subject to Strict Scrutiny

There is no need to search for hidden motive before applying strict scrutiny because disparate treatment based on native language speaks for itself. Defendants' argument to the contrary in reliance on *Garcia v. Gloor*, 618 F.2d 264 (5th Cir. 1980), cited at Def. Br. at 20, is unpersuasive because that case did not involve disparate treatment based on native language.

In *Garcia*, an employer adopted an English-only "rule prohibiting [multi-lingual] employees from speaking Spanish on the job unless they were communicating with Spanish-speaking customers." *Id.* at 266. The Fifth Circuit recognized that "language might well be an immutable characteristic" protected by Title VII, but explained that "the language a person who is multi-lingual elects to speak at a particular time is by definition a matter of choice." *Id.* at 270. The English-only rule did not overtly discriminate based on national origin because "[n]either the statute nor common understanding equates national origin with the language that one chooses to speak." *Id.* at 268.

Defendants, however, do not discriminate against Ms. Gonzalez based on the language that she "chooses to speak" but rather based on her *native* language, which *is* immutable and inextricably linked to her national heritage. Discrimination based on accent, which marks one as a non-native English speaker, is unlawful national origin discrimination. *In re Rodriguez*, 487 F.3d 1001, 1009 (6th Cir. 2007) ("[C]omments concerning Rodriguez's accent [are] direct evidence of national-origin discrimination.") (collecting cases); *see also Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir.1984) ("[T]he decision to demote the Plaintiff … was made on the basis of his national origin and related accent"), cited with approval in *Cartagena v. Aegis Mortg. Corp.*, 275 F.3d 46 n.4 (5th Cir. 2001). Just as "accent and national origin are inextricably intertwined," *Rodriguez*, 487 F.3d at 1008 (citation omitted), so is native language inextricably intertwined with national origin, *Asian Am. Bus. Grp. v. City of Pomona*, 716 F. Supp. 1328, 1332 (C.D. Cal. 1989) ("[T]he use of foreign languages is clearly an

5

expression of national origin."). Strict scrutiny applies because Defendants' disparate treatment of Ms. Gonzalez based on her native language discriminates based on national origin. *Id.*

Defendants do not dispute that their proffered objectives of "encourag[ing] language training in American schools" and "highlight[ing] [the] success of the American educational system in training students to acquire new languages" fail strict scrutiny. *See* Def. Br. at 24 (making rational basis arguments). Indeed, native-language discrimination undermines those objectives. Disqualifying candidates from funding to train as prospective teachers of a foreign language solely because of their native language impairs language training and embarrasses the American education system. Ms. Gonzalez is thus likely to succeed on her equal-protection claim.

## II. Ms. Gonzalez Is Entitled to Injunctive Relief

### A. Disbursement of 2022 Funds Does Not Affect Ms. Gonzalez's Entitlement to a Doctoral Fellowship

Congress appropriated 2023 funds to "support visits and study in foreign countries by individuals" like her under the Fulbright-Hays Act. Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. H, tit. III (2022) 136 Stat. 4459, 4894. Defendants can therefore award Ms. Gonzalez a Doctoral Fellowship using 2023 appropriations even if 2022 funds have been disbursed.

Such relief is not "money damages" that is barred by 5 U.S.C. § 702. *See* Def. Br. at 14. "[A] claim that would require the payment of money by the federal government" is "not a claim for money damages" unless it seeks payment as "compensatory relief … to *substitute* for a suffered loss." *Bowen v. Massachusetts*, 487 U.S. 879, 894-95 (1988) (quoting *Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441 (D.C. Cir. 1985)) (emphasis in original). By contrast, payment is specific relief permitted under § 702 if it is an "attempt to give the plaintiff the very thing to which he was entitled." *Id.* at 895. While a Doctoral Fellowship "happens to [include] the payment of money," such payment is not substitute for some other loss but is part of the specific relief to which Ms. Gonzalez is entitled. *Id.* at 900.

Defendants' reliance on *City of Houston v. HUD*, 24 F.3d 1421 (D.C. Cir. 1994), cited at Def. Br. at 12, is misplaced. There, Houston received $20 million out of the 1986 appropriations, and HUD took back $2.6 million. *Id.* at 1424. The D.C. Circuit held Houston's suit for return of the 1986 funds was moot because that appropriation lapsed. *Id.* at 1427. The court also responded to Houston's "suggest[ion]" that HUD could use other funds not reserved for any particular year, by announcing without further explanation or legal citation that "monetary relief from any source of funds other than the 1986 … appropriation would constitute money damages rather than specific relief, and so would not be authorized by APA section 702." *Id.* But the D.C. Circuit subsequently walked back this pronouncement, explaining that "[t]he principal issue in *City of Houston* was mootness, not the question of allowable specific relief as opposed to unavailable money damages." *Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 830 (D.C. Cir. 2000). On that latter question, courts should instead "focus on the nature of the relief sought, not on whether the agency still has the precise funds." *Id.* at 829. "Where a plaintiff seeks an award of funds to which it claims entitlement under a statute [or regulation], the plaintiff seeks specific relief, not damages." *Id.* Under that rubric, Ms. Gonzalez's request for a Doctoral Fellowship is a claim for specific relief.

It is unsurprising that neither the Fifth Circuit nor any district within it has adopted *City of Houston*'s broad definition of money damages, as even the D.C. Circuit has distanced itself from that flawed precedent.[2] This Court should not adopt it, as doing so contravenes the Fifth Circuit's instruction that "the meaning of the phrase 'money damages' is narrowly construed" to only "refer[]

---

[2] As Defendants note, the Second Circuit appears to be the only circuit to incorporate *City of Houston*'s reasoning regarding money damages. *See Cnty. of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010), cited at Def. Br. at 13. That incorporation, however, has been interpreted narrowly. *Rodriguez v. Carson*, 401 F. Supp. 3d 465, 469 (S.D.N.Y. 2019), clarified that the Second Circuit did not "incorporate any more of *City of Houston* than was necessary to support the holding in *County of Suffolk*," which concerned a claim for payment after the relevant program's sunset provision had triggered, and all funds have been disbursed. *Cnty. of Suffolk*, 605 F.3d at 138, 141. Here, the Doctoral Fellowship program has not sunset, and Congress appropriates new funding each year.

7

to a sum of money used as compensatory relief." *Phillips Petroleum Co. v. Johnson*, No. 93-1377, 1994 WL 484506, at *1 (5th Cir. Sept. 7, 1994). In the Fifth Circuit, "a monetary remedy is properly considered specific relief when it gives the plaintiff 'the very thing to which [s]he was entitled,'" *Anderson v. Jackson*, 556 F.3d 351, 359 (5th Cir. 2009), which here is the Doctoral Fellowship.

Even Defendants' expansive definition of money damages would not prevent Ms. Gonzalez's requested relief. *City of Houston* held "no-year funds" could not substitute for the lapsed 1986 appropriations that Houston sought. 24 F.3d at 1427. Here, Ms. Gonzalez does not seek to substitute 2023 for 2022 funds because she does not seek 2022 funds at all. Rather, she seeks a Doctoral Fellowship, which can be funded in any year by appropriations for that year. *See Rodriguez*, 401 F. Supp. 3d at 470 (*City of Houston*'s reasoning as adopted by *County of Suffolk* permits payments where "funds that remain in the Government's possession are not 'unavailable' as a source of specific relief as far as the Appropriations Clause."). In *Bowen*, Massachusetts did not ask for the precise Medicare dollars that the federal government refused to pay—any dollar would do—and the Court was unconcerned about the fate of the original dollars when holding § 702 did not bar such payment. *See id.* at 883 n.3, 887 nn. 8-9 (noting that it was unclear what happened to the original funds). Ms. Gonzales likewise does not care which dollars pay for her Doctoral Fellowship. Congress appropriated funds in 2022 *and* 2023 to support research such as hers. If, as Defendants claim, 2022 funds lapsed, the Court may still order Defendants to fund her Doctoral Fellowship using 2023 funds.

### B. Neither Rulemaking nor the Unlawful Devaluation Scheme Tilts the Balance of Harms in Defendants' Favor

As an alternative to being awarded the Doctoral Fellowship, Ms. Gonzalez seeks to enjoin Defendants from considering native language when evaluating applications for the 2023 cycle. Such an injunction is not burdensome because Defendants did the same for "heritage" speakers in 2022 in response to Plaintiff Samar Ahmad's motion for preliminary injunction. *See* ECF 18.

Defendants claim an injunction would interfere with their promised rulemaking, but do not explain how. *See* Def. Br. at 25-26. If Defendants' (not yet) proposed rule is inconsistent with an injunction to evaluate candidates on a nationality-neutral basis, that proposal must be rethought. Far from "inject[ing] confusion into the agency's decision making," *id.* at 26, an injunction would provide a helpful guidepost. In any event, Defendants do not dispute that their "rulemaking effort … will not be complete for the 2023 application cycle" and thus could not prevent discrimination against Ms. Gonzalez's 2023 application. Mot. at 23. Defendants cite no authority stating that the promise of rulemaking allows an agency to inflict irreparable harm in the meantime. A (not yet) proposed rulemaking cannot outweigh irreparable injury to Ms. Gonzalez, especially since the injury is inflicted against her constitutional right, and the rule will not be ready soon enough to prevent it.

Defendants next argue that "harm to Plaintiff Gonzalez absent a preliminary injunction would be minimal at best" because of their last-minute decision to "allocat[e] one point to the Foreign-Language Criterion" instead of 15. Def. Br. at 27. But the Constitution does not say a little bit of invidious discrimination is okay. *Any* disparate treatment based on national heritage—even a one-point barrier—irreparably injures Mr. Gonzalez's constitutional right to *equal* protection. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993) (defining constitutional injury as "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit"); *see also BST Holdings, LLC. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (staying agency action because "loss of constitutional freedoms for even minimal periods of time … unquestionably constitutes irreparable injury" (cleaned up)).

Worse still, devaluing the foreign-language criterion from 15 points to one is itself illegal and inflicts further irreparable injury. The purpose of the Doctoral Fellowship is to "conduct dissertation research abroad in a modern foreign language," 34 C.F.R. § 662.1(b), which requires awardees to "[p]ossess[] sufficient foreign language skills," *id.* § 622.3(d). By demoting that criterion to "1 point

9

out of a potential 106 points total," Def. Br. at 27, Defendants make language skills virtually irrelevant for all applicants, thereby violating 22 U.S.C. § 2452(b)'s instruction to award fellowships to "promot[e] modern foreign language learning." Defendants also acted arbitrarily and capriciously because this unexplained departure from prior practice conflicts with their own regulation requiring "sufficient foreign language skills." 34 C.F.R. § 622.3(d); *see, e.g., Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("Unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." (cleaned up)).

Devaluing the foreign-language criterion heaps new irreparable injuries upon Ms. Gonzalez. She and all other candidates with advanced language skills should enjoy a 15-point advantage over those who lack foreign-language skills and a 5-to-10-point advantage over those with mediocre skills. That advantage has now been whittled away to one point; less than one percent on a 106-point test! In other words, purportedly in support of a statute enacted to provide the nation with more foreign-language speakers, Defendants made Ms. Gonzalez's foreign-language skills virtually worthless in the evaluation process for a language-study fellowship that Defendants' own regulation say requires "sufficient foreign language skills." 34 C.F.R. § 622.3(d). Ms. Gonzalez requested a preliminary injunction to require Defendants to fairly evaluate her language skills. Defendants' apparent willingness to eviscerate the core purpose of the Doctoral Fellowship program to deny Ms. Gonzalez fair treatment reinforces the need for injunctive relief. Such an injunction should include the illegal and irrational devaluation scheme so that Ms. Gonzalez and similarly situated others may receive full *and* meaningful point values for their language skills.

## CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction.

|  |  |
|---|---|
| February 7, 2023 | Respectfully submitted, |
|  | /s/ Sheng Li |
|  | Sheng Li, Pro Hac Vice<br>John J. Vecchione, Pro Hac Vice<br>NEW CIVIL LIBERTIES ALLIANCE<br>1225 19th Street NW, Suite 450<br>Washington, DC 20036<br>(202) 869-5210<br>Sheng.Li@ncla.legal<br>John.Vecchione@ncla.legal |
|  | Cory R. Liu, TX Bar No. 24098003<br>ASHCROFT SUTTON REYES LLC<br>919 Congress Ave, Suite 1325<br>Austin, TX 78701<br>(512) 370-1800<br>cliu@ashcroftlawfirm.com |

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2023, an electronic copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

/s/ Sheng Li

11